Apelian *v.* Apelian, Appellant.

Argued November 17, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Charles D. Fogles,* for appellant.

*James F. Masterson,* for appellee.

OPINION BY PARKER, J., December 16, 1933:

The respondent has appealed from a decree by a court of common pleas granting an absolute divorce on the grounds of cruel and barbarous treatment and indignities to the person.

As the sole question presented to us is the sufficiency of the testimony to support the decree, it is necessary to give an outline of the evidence. The parties, Armenian by birth, were married on December 9, 1929, and lived together about twenty months. Libellant came to this country when four years of age, obtained a high school education and took courses at Temple University, and the respondent came here when he was in his twenties and became a registered pharmacist. A few months prior to the marriage, respondent, who had been working at his trade in New Jersey, gave up his position and came to live with the parents of the libellant in Philadelphia. Since that time he has been unemployed, with the exception of a brief interval, but spent a large portion of his time in a brokerage office speculating with such means as he had, and with the usual result. He did, however, make some effort to secure employment and was not successful.

The libellant testified that the respondent had compelled her to submit to unnatural intercourse on a large number of occasions; that he struck her with his fist privately and in the presence of others, beating her severely forty or fifty times and causing great agony and distress. She gave the circumstances in

detail of several of the occasions when he resorted to physical abuse. She also testified that on one occasion he demanded that she should secure $1,000 from her father to give him and when she failed to do so, beat her so severely that she ran from her bedroom to her father's room for protection where respondent followed her with a gun in hand; that at another time he threatened her with a gun, saying that he would kill her; that he reviled her with oaths in private and in public, called her a fool, a bitch, and a whore, causing her great embarrassment; and that he contributed practically nothing to her support but lived upon her parents until the time of the separation. The respondent denied all of these allegations and, while he admitted serious disagreements which he ascribed to the interference of libellant's mother, claimed that their married life was for the most part not far from normal. There were some inconsistencies and minor contradictions in the testimony of both parties. The libellant, being prodded with an exhaustive cross-examination with a repetition many times of questions bearing on the same subject, may have been guilty of some exaggeration. If this constituted all of the evidence in the case and there were no convincing circumstances warranting a disregard of the contradictory evidence, the decree of the lower court could not be supported by the testimony of the complainant alone, contradicted as it was by that of the respondent: Rommel v. Rommel, 87 Pa. Superior Ct. 511.

In view of the conflicting testimony of the parties, the matter of corroboration becomes of importance. As to the charge of unnatural intercourse there was, as was to be expected, no extrinsic corroboration, and we will pass consideration of this charge for the present. Libellant was corroborated by her father in that the respondent struck her violently on several occasions at her home and at one time in a public park;

that he threatened and pursued her with a gun; that he used vile, profane, and obscene language toward her; and that he did not contribute to her support. She was corroborated as to acts of violent physical abuse by four apparently disinterested witnesses. Three of such parties testified that he struck her in the face with his fist in her father's store, on one occasion leaving a red mark on her face and at another time knocking her to her knees and causing her nose to bleed and her eyes to swell. Sarah Wilson, a colored wash woman, testified that on two occasions the respondent beat the libellant. The witness said that on the first occurrence she was in the cellar of the home of the parties when she heard her name called, and on going to the first floor found the respondent beating the libellant on the face with his fists; that she asked him not to do that and he said: "Mind your own damned business; she is my wife, and I'll kill her, the damned) bitch, if I want to do it." At the other time she heard the respondent ask the libellant to get a drink for him, and when she did not get up promptly he "slapped her in the face with his fist." A fifth witness, a cousin of the libellant, corroborated her as to the use of vile language toward her and stated that the respondent told him that he had just married the libellant for her money.

Upon the part of the respondent, five witnesses were called for the purpose of rebutting the charges alleged in the libel. These parties were all Armenians and friends of the family. Four of them testified that they had never seen any abuse of the libellant or heard any bad language used toward her while they were present. The evidence so given was largely negative and had little value. Another witness testified that the libellant told her six or seven months after their marriage that she did not realize that she could love any one as much as she did her husband. Some force

was given to the negative testimony by the fact that the libellant took the stand in rebuttal and stated that while her husband did not beat her or strike her in the presence of the witnesses who testified for the respondent, he did swear at her, but she was not called upon to name the occasions or persons who were present when he swore at her. Another witness, Isaiah George, who seems to have enjoyed the confidence and respect of both parties, was called by the respondent. Mr. George's wife was a relative of the respondent. When testifying with regard to a visit at the home of the parties, he was asked if Mr. Apelian used any profanity toward his wife and his reply was that he did not remember. He was also asked whether Mr. Apelian attempted to strike or beat his wife, and he replied: "Really, I do not remember, if you want me to tell the truth." It is rather odd that Mr. George, who had introduced the parties to each other and helped to bring about their marriage, could not remember whether a man had struck his wife in the presence of the witness. The remainder of his testimony, however, was to the effect that he did not notice anything abnormal in the conduct of the parties toward each other. This evidence furnished very little corroboration for the defendant.

Eliminating from consideration the charge of unnatural intercourse, there can be no doubt that the violent beating of the libellant by the respondent, accompanied by threats upon her life, if such took place, constituted cruel and barbarous treatment as that expression is used in the "Divorce Law" of 1929. The master and the court below were impressed, as are we, by the strength of the evidence offered in support of these charges. The fact that the libellant was able to produce three disinterested witnesses who testified to violent attacks upon her in her father's store and a fourth witness to like attacks in her home, pre-

sents an unusual situation. These witnesses were not in any way connected with each other, but all four described unconnected events. We cannot believe that so many persons could have been procured to commit wilful and deliberate perjury and give with much detail events that had not taken place. Nothing has been shown which would warrant us in disregarding such testimony. While the witness, Sarah Wilson, was mistaken as to the number of the house where she was working at the time she alleged the respondent struck the libellant and was compelled to change her testimony in that respect, her explanation as to how the error occurred was satisfactory.

The master made one finding of fact with which we are unable to agree. In discussing the subject of unnatural intercourse, he stated: "In view of the gravity of the charge, the master has gone into this matter somewhat at length and here makes a specific finding that respondent was not guilty of unnatural intercourse with libellant." The lower court did not indicate that it was of a like opinion. This finding was equivalent to saying that the libellant had deliberately perjured herself when she charged her husband with a heinous crime and one which she must have known it would be difficult for him to disprove. If she did so, it would cast a doubt upon her entire case. We agree that if there were no other testimony on the subject than that of the parties, it would be impossible to tell where the truth lay, and he might have concluded that such charge was not proven, but it is a very different matter to find affirmatively that it did not occur. We cannot so conclude from the testimony. Our conclusion is that there was ample testimony to support the decree independent of the charge of unnatural intercourse.

Our independent judgment, after an examination of the voluminous record submitted to us, is in accord

with that of the court below and of the master who heard and saw the witnesses, that the libellant is entitled to a divorce. While the findings of a master have not the conclusiveness of those of an auditor or master in chancery, they are entitled to consideration: Rommel v. Rommel, 87 Pa. Superior Ct. 511, 512; Nacrelli v. Nacrelli, 288 Pa. 1, 136 A. 228.

The decree of the lower court is affirmed at the cost of appellant.