## Frantz, Appellant, *v.* Frantz.

Argued December 15, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and RHODES, JJ.

*Raymond L. Brennan*, with him *John B. McGurl*, for appellant.

*P. B. Roads*, with him *Isadore Krasno*, for appellee.

OPINION BY RHODES, J., January 31, 1939:

This is an appeal by libellant from the decree of the court below dismissing the libel in divorce after the master had recommended the granting of a decree in favor of libellant on the grounds that respondent did, by cruel and barbarous treatment, endanger his life, and did offer such indignities to the person of libellant as to render his condition intolerable and his life burdensome. See "The Divorce Law" of May 2, 1929, P. L. 1237, §10 (e, f), 23 PS §10 (e, f).

Libellant and respondent were married in 1912. They had five children whose ages at the time of the hearing before the master ranged from nineteen to twenty-five years. On April 27, 1937, libellant filed his libel in divorce. Subpoena was awarded and served on respondent. A master was appointed on August 27, 1937. On September 13, 1937, after due notice, a hearing was held before the master for the taking of testimony. Before the master appeared libellant, his attorney, and several witnesses, and also attorneys for respondent. Respondent filed no answer to the libel, and no testimony was offered on her behalf. The master filed a comprehensive report in which he recommended that a decree in divorce be granted to libellant on the grounds set forth in the libel. Respondent filed exceptions to the master's report, and, on February 15, 1938, libellant moved to dismiss respondent's exceptions to the master's report, for the reason that respondent failed to appear in court, either personally or by counsel, when argument on the exceptions was to be heard, and failed to comply with Rule 26 of the Rules of the Court of Common Pleas of Schuylkill County.[1] No action was taken by the court

[1] "Paper Books:—The party entitled to begin and conclude shall furnish to each of the judges, before the commencement of the argument, and to opposing counsel five days before argument, a paper book, printed, or written by typewriter, upon one side of substantial and well-sized paper, properly signed and endorsed. ......"

below on the motion to dismiss respondent's exceptions, and on March 14, 1938, the court below, without having previously afforded libellant an opportunity to be heard on the exceptions filed by respondent, filed its opinion dismissing the libel.

The court below was of the opinion that there was no corroborating testimony that warranted the granting of a decree in divorce to libellant, and that the testimony of libellant himself was insufficient.

The burden was on libellant to clearly establish the grounds alleged in the libel in order to warrant a decree of divorce (*Putt v. Putt*, 118 Pa. Superior Ct. 74, 76, 180 A. 92), and the weight of the evidence must be in his favor (*LaClair v. LaClair*, 128 Pa. Superior Ct. 469, 471, 194 A. 224).

But this case is not to be confused with those wherein the allegations of the libellant were denied or explained by respondent, and there was little or no corroboration of libellant. Whether libellant has met the legal requirements is to be determined solely from an examination of his testimony and that of his witnesses. The testimony of the libellant alone may be sufficient to support a decree. *Rommel v. Rommel*, 87 Pa. Superior Ct. 511, 513. In the instant case there is material corroboration of the testimony of libellant, and there is an entire absence from the record of any contradictory evidence.

The testimony of libellant is a recital of acts constituting cruel and barbarous treatment on the part of respondent, and of such conduct by respondent as in our opinion would render his condition intolerable and life burdensome. Libellant in his testimony narrated the words spoken and the things done by respondent that constituted cruel and barbarous treatment and indignities to the person. See *Ford v. Ford*, 67 Pa. Superior Ct. 350. It is significant that his version of their marital difficulties is uncontradicted, and the testimony

of his witnesses was likewise uncontradicted. *Cf. Reed v. Reed,* 30 Pa. Superior Ct. 229. We shall not undertake to give a detailed recital of the testimony, as it would serve no purpose to put in print the vile language attributed to respondent, which it would be difficult to surpass. Conduct and threats which may not amount to treatment endangering life are properly considered, in connection with other conduct, under a charge of indignities to the person. *Sklan v. Sklan,* 110 Pa. Superior Ct. 226, 168 A. 481; *Conrad v. Conrad,* 112 Pa. Superior Ct. 198, 200, 170 A. 342.

A decree in divorce on the ground of cruel and barbarous treatment endangering libellant's life must be supported by evidence establishing or showing actual personal violence or reasonable apprehension of it, such as to endanger his life and render cohabitation unsafe. *Putt v. Putt,* supra; *Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 189 A. 566. In the instant case the testimony discloses not only grounds for reasonable apprehension of personal violence on the part of libellant, but, in fact, the infliction of personal violence upon him by respondent.

We have frequently stated that it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, 35, 161 A. 453. Here the conduct of respondent consisted of the grossest vulgarity, abusive language, malignant ridicule, manifest disdain, intentional incivility and neglect, continual accusations of immoral conduct, accompanied with the most vile and profane language. The testimony shows that for years respondent manifested a most contemptuous attitude toward libellant, accused him repeatedly of the grossest immorality, interfered with his business as a common carrier of passengers, repeatedly threatened to take his life, by poison

or with a knife, until, after a vicious attack on his person, he withdrew finally from the common domicile.

Libellant's testimony in brief was that his marital troubles began with respondent's accusing him of illicit and immoral relations with other women; that from 1927 until May 2, 1933, the relationship between the parties grew worse; that these accusations were made by respondent in the presence of their children and other persons; that the accusations were accompanied by the use of vile, profane, and insulting language (which libellant recited in detail); that respondent frequently threatened to kill libellant; that libellant was often obliged to take a knife from respondent's hands when she threatened to kill him; that respondent told libellant that she was going to kill him because she was not going to put up with him; that respondent told him to get out and not come back; that she frequently threatened to poison libellant; that he was afraid to enter his own house, and often for this reason slept elsewhere; that finally respondent and their eldest son attacked libellant, as the result of which he was driven from his home.

For years respondent refused to eat her meals with libellant, and whenever he was in the house he was subjected to accusations of misconduct and threats of violence. A reduction of respondent's allowance from $200 a month to about $125 a month, on account of a falling off of libellant's business, was attributed by respondent to libellant's keeping other women and maintaining apartments in Atlantic City and elsewhere. Respondent accused libellant of being crazy, and she refused to associate with any of his friends. She was obsessed with the idea not only that libellant was immoral, but that women generally had this characteristic. Respondent's conduct affected libellant's health. During these periods when, on account of respondent's conduct, he took his meals elsewhere, his health was improved. We can find no justification or excuse for her actions.

If the testimony of libellant is to be believed, and it is uncontradicted, it clearly establishes the grounds for divorce set forth in the libel. It discloses a continuous course of conduct on the part of respondent which, under our statute and decisions, entitles libellant to a divorce. We think respondent's conduct not only manifested a settled hate and contempt for libellant and a desire for his death, but established grounds for reasonable apprehension of violence on his part. Respondent's conduct from 1927 until May 2, 1933, as described by libellant, could not fail to have rendered his condition intolerable and life burdensome. A witness for libellant testified that he heard respondent say that she would rather kill libellant than put up with him in her old days. This witness also testified that on one occasion he saw respondent enter libellant's bus, and heard her call libellant most vile names with several people present in the bus and within hearing distance. Libellant's attitude, as described by this witness, indicated fear of respondent and apprehension of personal violence. Another witness called on behalf of libellant corroborated libellant as to the attack by respondent and their son, which occurrence was the culmination of their marital difficulties.

Reference is made in the opinion of the court below to the failure of libellant to call his children to corroborate his testimony. We do not think that there was any absolute duty on the part of libellant to have called his children to testify, nor do we think that such failure is indicative of the falseness of libellant's testimony. They were not called by respondent to challenge anything libellant said. In our judgment, under the circumstances, his testimony and the material portions of the testimony of his witnesses must be accepted as true, and, being so accepted, they substantiate the averments in the libel.

In this case the witnesses appeared before a master who took the testimony. While his findings are not con-

clusive, and are not accepted with the same finality as those of an auditor or master in chancery, still they are entitled to consideration as the master has heard and seen the respective witnesses. *Apelian v. Apelian,* 111 Pa. Superior Ct. 208, 214, 169 A. 454. We are obliged to make an independent investigation of the evidence in order to learn whether it does in truth establish a legal cause for divorce. *Rinoldo v. Rinoldo,* supra. After such examination we have reached the conclusion that the evidence establishes that respondent, by cruel and barbarous treatment, endangered libellant's life, and that her conduct was such as to render libellant's condition intolerable and life burdensome, and that a divorce should be granted on the grounds recommended by the master.

In view of our conclusion, it is unnecessary for us to comment on the procedure followed by the court below, which was the subject of the third assignment of error on this appeal.

The decree of the court below dismissing the libel is reversed, and the record is remitted that a decree of divorce a vinculo matrimonii may be entered in favor of libellant.