## Santilli, Appellant, v. Santilli.

Argued May 1, 1944. Before KELLER, P. J., BALDRIGE, HIRT, KENWORTHEY, RENO and JAMES, JJ. (RHODES, J., absent).

*Clyde P. Bailey,* of *Bailey & Critchfield,* with him *James B. Ceris* and *Charles McC. Barrickman,* for appellant.

No one appeared or filed a brief for appellee.

OPINION BY BALDRIGE, J., July 15, 1944:

The appellant filed a libel in divorce charging her husband with cruel and barbarous treatment and offering such indignities to her person as to render her condition intolerable and her life burdensome. A master was appointed who recommended that a divorce be granted on both grounds. Exceptions filed thereto by the respondent were sustained by the learned court below. This appeal followed.

In the discharge of our duty of carefully reviewing the record to determine whether in our judgment the libellant has established legal cause for a divorce (*Rinoldo v. Rinoldo,* 125 Pa. Superior Ct. 323, 189 A. 566; *Frantz v. Frantz,* 134 Pa. Superior Ct. 481, 3 A. 2d 987) we find ourselves in disagreement with the learned court below.

The parties were married November 13, 1919. The wife had been previously married and was the mother of five children. Her first husband lost his life in the course of his employment and from the compensation received she purchased a house in which she and respondent lived. At the time of the hearing, February 27, 1940, libellant was 60 years of age and respondent 61 years. Since 1928, although living under the same roof, the husband occupied the third floor and she and the other members of the family the first and second floors of their home. Respondent is an excessive drinker, and according to libellant has not been employed for some time as he is "playing sick." On August

7, 1939, prior to the institution of this divorce case he had sued her for desertion and non-support, which proceeding was dismissed. The lower court denied the divorce on the ground that the respondent's actions of which libellant complains occurred in the main years ago, from 1922 to 1926. It is true that the husband started to abuse his wife shortly after they were married and that most of his cruel conduct occurred when they were living together as husband and wife, but it was not confined to, but extended beyond, that period. He repeatedly threatened her life, inflicted severe physical punishment by kicking, hitting and choking her. On several occasions she had to have him arrested for assault and battery. He threatened her with a gun, broke down the doors in the house and repeatedly used obscene and profane language, calling her a "bitch" a "whore," charged her with infidelity, and prevented her from sleeping, etc. A number of the attacks and charges made against her were in the presence of other persons.

Joseph Calderone, her son-in-law, employed by the Pennsylvania Railroad Company as a ticket agent for many years, testified that he was present in the house when the libellant came running downstairs calling out "he is going to kill me." When he went up to the bedroom he found respondent intoxicated and noticed a gun under his pillow. He stated also that respondent threatened her on other occasions; that he charged her with lewdness; stated that she was but a "street woman", and that he saw him strike her different times. He testified that these physical attacks, some of which occurred in the presence of others, continued until 1936. He told of an incident as late as Decoration Day of 1939. On that day a girl, to whom libellant's son was paying attention, and her parents, who lived in Cleveland were invited to meet the young man's family. They were sitting in the libellant's home when the respondent started to swear at his wife saying: "Your

family and all your relations are no good." On this occasion he called her a "street woman," a "whore" and other vile names.

The daughter of the libellant, who was 22 years of age, employed as a stenographer, told of the severe beatings her mother received from her stepfather, and of his excessive drinking. She corroborated the testimony of her brother-in-law that the respondent charged his wife with being immoral and calling her indecent names, and that this treatment seriously affected her mother's health.

We have not gone into the marital history of this couple in great detail as that is not necessary. We have made sufficient reference thereto to show that the husband was very frequently brutal in his treatment of his wife; that at different times he attacked her so violently and was in such a mental attitude that she had good reason to believe that her life was in danger. It is a significant fact that although the husband was present at the different hearings before the master he offered no testimony in contradiction of that produced by the libellant. When asked if he desired to testify he gave a negative answer.

Cruel and barbarous treatment may be established by evidence of a course of treatment that endangers a wife's life or health and renders her cohabitation with her husband unsafe, but such a course of treatment need not be shown; a single act of cruelty may be so severe and brutal as to justify a divorce. If she establishes that her life was in danger or she had reasonable grounds for apprehending that further cohabitation was unsafe, she has met the legal requirements: Mentser v. Mentser, 136 Pa. Superior Ct. 582, 588, 7 A. 2d 541; Lowe v. Lowe, 148 Pa. Superior Ct. 439, 444, 25 A. 2d 781.

On the other hand, the charge of indignities to the person cannot be established by a single act. It must

be proved by a course of conduct that would render her condition intolerable and her life burdensome; that is essential to support the charge: *Esenwein v. Esenwein*, 312 Pa. 77, 167 A. 350.

A careful consideration of this testimony leads us to the conclusion that the wife has successfully carried the burden imposed upon her of clearly substantiating the charges set forth in the libel. The decree is reversed and the record remitted to the court below with direction to enter a divorce to the libellant on the grounds of cruel and barbarous treatment and indignities to her person as to render her condition intolerable and life burdensome.