## Herr v. Herr

D. W. Kearney, for plaintiff.
J. Mettler Pensyl, for defendant.

TROUTMAN, J., March 11, 1946.—This is an action of divorce brought by the husband, J. Emerson Herr, against his wife, Catherine Herr, on the grounds of cruel and barbarous treatment and indignities to the person. A subpœna in divorce a. v. m. was issued on January 18, 1945, returnable February 19, 1945, and was personally served upon respondent, Catherine Herr, at her residence in the City of Sunbury, Northumberland County, Pa., together with a true and attested copy of the libel. On January 24, 1945, respondent entered the Danville State Hospital at Danville, Pa., as a patient, and has been confined to the said hospital ever since. A general appearance was entered for respondent by her attorney, J. Mettler Pensyl, on February 10, 1945. On March 12, 1945, on petition of libellant, Edna Uhlig, an aunt of respondent, was appointed a committee ad litem for her. Service of a copy of the petition for the appointment of a committee was accepted by the attorney for respondent. On May 16, 1945, Honorable H. W. Cummings, president judge, vacated said appointment and appointed F. F. Reamer, Esq., as Committee of Catherine Herr, the respondent. A master in divorce was appointed on April 12, 1945,

and a hearing was held before him on July 23, 1945, at which there were present the attorney, the committee and a witness for respondent. Subsequently the master filed his report in which he recommended an absolute divorce on the grounds set forth in the libel, to which report the attorney for respondent and her committee filed exceptions, which are now before the court for disposition.

Exception was taken to the tenth finding of fact of the master which is "That during the period between said treatments the respondent was mentally well, entirely rational and sane". There is testimony to the effect that respondent had been a patient in the clinic of the Danville State Hospital in 1936 for a period of six weeks and that in 1939 she was again admitted to the institution where she remained for a period of 13 weeks. There is further testimony that she was admitted to the Danville State Hospital in 1942 as a patient. There is no evidence as to how long she remained on this occasion. Respondent was again admitted to the Danville State Hospital on January 24, 1945, where she is now confined. The only evidence as to her mental condition is to the effect that she was suffering from a nervous ailment and apparently recovered from these mental disturbances very rapidly after being confined to the institution. There is no testimony in relation to her mental condition while she was at home. At the hearing before the master it was admitted by both parties that respondent was then suffering from a mental illness and was then confined in the Danville State Hospital.

F. F. Reamer, Esq., the committee for respondent, was called as a witness and testified that he had interviewed respondent on July 16, 1945, and that she appeared to be rational and intelligently answered the questions which were propounded to her. She did display nervousness and was highly emotional. No other witnesses were called on behalf of respondent and there

was no other testimony in relation to her mental condition prior to the master's hearing. There is no testimony in the record which would indicate that respondent was of unsound mind during all of the period when the matters complained of on the part of libellant occurred. While it is true respondent was a patient at the Danville State Hospital on several occasions during that period, there is nothing in the testimony which would warrant a conclusion that she was not recovered from her mental or nervous disorder when she returned from the hospital.

When the action in divorce was instituted respondent was not confined to a mental hospital and was personally served with the subpœna and a copy of the libel. After respondent was confined in the mental hospital every precaution was taken to protect her rights, she having been represented by able counsel both as her attorney and as her committee. They were both present at the hearing and had ample opportunity to present any defense which might have been available to respondent. While all the parties agreed that at the time of the hearing respondent was confined to a mental hospital on account of a mental illness, yet there was not the slightest indication that respondent was a lunatic or hopelessly insane.

The mere commitment to a mental hospital, whether by voluntary act on the part of the patient or upon affidavits of the attending physicians as provided in The Mental Health Act of July 11, 1923, P. L. 998, and its amendments, is not an adjudication of lunacy, as the act provides for the commitment to institutions of any person who is mentally ill or who would be benefited by or who needs such care as is required by persons mentally ill. Such commitment does not determine the mental status of the person committed: Ryman's Case, 139 Pa. Superior Ct. 212, 222.

The master had ample testimony on which to base a finding that between treatments in the mental insti-

tution, respondent was mentally well, entirely rational and sane. As a matter of fact, there is nothing in the record to indicate that respondent was ever insane.

There is sufficient evidence to sustain the findings of the master that respondent, during the period from 1930 to 1945, indulged in a course of conduct which offered such indignities to the person of libellant as to render his condition intolerable and life burdensome and that libellant was subjected to such cruel and barbarous treatment so as to endanger his life and health.

To sustain the charges set forth in the libel, libellant testified to a long course of indignities and cruel acts and was corroborated by the testimony of two disinterested witnesses. While no answer was filed by respondent, nevertheless, libellant's witnesses were cross examined and every opportunity was afforded respondent to offer evidence in contradiction of the testimony of libellant and his witnesses.

In this case libellant was a fully competent witness to testify as to all facts, including acts of cruel and barbarous treatment and indignities to the person relied upon as grounds for divorce, even though respondent is confined to a mental hospital, and this is especially so where there has been a general appearance entered in behalf of respondent and an opportunity given her committee to make a defense on her behalf: Hickey v. Hickey, 138 Pa. Superior Ct. 271.

While it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable and life burdensome, it has been held by many courts that they may consist of vulgarity, unmerited reproach, habitual contumely, studied negligence, intentional incivility, manifest disdain, abusive language, maligant ridicule and other plain manifestations of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient: Breene v. Breene, 76 Pa. Superior Ct. 568, 572.

A careful review of the testimony in this case conclusively shows that libellant was subjected to a course of conduct on the part of respondent for a period of almost 15 years which clearly manifested settled hate and estrangement, vulgarity, unmerited reproach, malignant ridicule, abusive language and intentional incivility which rendered the condition of libellant intolerable and his life burdensome.

Exceptions have been filed to the master's fourteenth finding of fact and fifth conclusion of law, which finding of fact and conclusion of law were to the effect that the facts established that respondent had inflicted cruel and barbarous treatment upon libellant of such severity as to endanger his life and health. The testimony shows that respondent on many occasions threw various household articles at libellant and frequently struck him with her fists about the face and arms. There is also evidence to the effect that respondent threatened to kill libellant or get him in some other way. This course of treatment affected the health of libellant.

A decree in divorce on the ground of cruel and barbarous treatment endangering libellant's life must be supported by evidence establishing or showing actual personal violence or reasonable apprehension of it, such as to endanger his life and render cohabitation unsafe: Frantz v. Frantz, 134 Pa. Superior Ct. 481, 485; Mentser v. Mentser, 136 Pa. Superior Ct. 582.

The master had ample evidence on which to base his finding that respondent had inflicted such cruel and barbarous treatment upon libellant as to endanger his life and health.

A careful review of all of the testimony in this case clearly shows that respondent has been guilty of such cruel and barbarous treatment and indignities to the person of libellant so as to render his condition intolerable and life burdensome, which would warrant a decree in divorce on either or both of said grounds. Libellant cannot be deprived of the full effect of his

testimony because of the admission of respondent to a mental hospital from time to time. A divorce may be granted if it appears that the conduct complained of antedated the various periods of mental illness, and this is true, even if respondent were incipiently insane: Remsch v. Remsch, 13 D. & C. 373.

For the reasons hereinbefore discussed, the exceptions of respondent should be dismissed.

### Order

And now, to wit, March 11, 1946, the exceptions filed on behalf of respondent are dismissed, the report of the master approved, and it is ordered that a final decree in divorce be granted. Costs to be paid by libellant.