## Wile, Appellant, *v.* Wile.

*Divorce—Indignities to person—Evidence.*

A wife who has separated from her husband, will not be granted a divorce on the ground of indignities to her person, where there is no evidence that any physical violence had been offered to herself, and the only evidence of humiliation was her own testimony which was as follows: "He was brusque, curt, moody, had a queer disposition; his manner was not gracious; he was bored, as if it was an effort for him to talk. He never bought any presents; he had not any affection whatever, I might as well have been a block of stone. He would turn his cheek to be kissed. I tried to be very affectionate, very demonstrative, and very agreeable, when he would reply, 'Oh, don't worry me.'"

Argued Oct. 11, 1911. Appeal, No. 127, Oct. T., 1911, by plaintiff, from decree of C. P. No. 5, Phila. Co., Dec. Term, 1910, No. 1,410, refusing divorce in case of Elsa Feder Wile v. Simeon Wile. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Libel for divorce.

The case was referred to C. Stuart Patterson as master, who recommended a decree in favor of the libelant.

Exceptions to the master's report were sustained, and a decree was entered dismissing the libel.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the libel.

*A. S. Weill,* for appellant.—To render the condition of the wife intolerable, and her life burdensome, it is not necessary that there should be blows, or cruel and barbarous infliction of batteries that endanger her life. There may, without that, be such indignities to her person as to render her life a burden: Elmes v. Elmes, 9 Pa. 166; May v. May, 62 Pa. 206; Augenstein v. Augenstein, 45 Pa. Superior Ct. 258; Krug v. Krug, 22 Pa. Superior Ct. 572; Butler v.

Butler, 4 Clark (Pa.), 284; Richards v. Richards, 37 Pa. 225; Olson v. Olson, 27 Pa. Superior Ct. 128; Reed v. Reed, 30 Pa. Superior Ct. 229.

No printed brief for appellee.

OPINION BY ORLADY, J., March 1, 1912:

The parties, libelant and respondent, were married September 3, 1906, in New York city and soon thereafter began housekeeping in Rochester, N. Y., where the respondent was engaged in business. They continued to live together until February 25, 1907, when the libelant left their home, and in September, 1909, she established her residence in Philadelphia, where she has since resided.

The libel was filed December 14, 1910, and two causes for divorce were alleged, first, cruel and barbarous treatment; second, indignities to the person of the libelant, etc. The first charge is not pressed as there was no evidence offered to sustain it.

After a hearing before a master, who recommended that the prayer of the libelant be granted, the court heard further argument and entered the decree refusing to approve the report of the master, and dismissed the libel.

A careful examination of all the testimony satisfies us that the proper judgment was entered. It is evident that though the parties had been acquainted for over one year previous to their marriage,—they were aged twenty-seven and thirty-five years respectively—they did not appreciate the character of the contract they were making, nor understand each other's feelings in relation to it.

The wife testified that it was a disappointment all around, and gave as a reason, which was suggested by her husband, "That in Rochester it was customary for girls to receive a dot or dowry," which was not observed in this instance, and that this was the cause of the whole trouble. Further cause for disappointment was the fact of the parties living in the same family with the mother of the respondent. After months of contention and difference as

to their respective duties, the wife withdrew from her husband's home, with the statement, "If he ever felt he wanted me back, and would make a home for me and mine alone, I'd come."

There was no complaint of inadequate maintenance, her principal grievance being that her husband's treatment of her was negative and it humiliated her. "He was brusque, curt, moody, had a queer disposition; his manner was not gracious; he was bored, as if it was an effort for him to talk. He never bought any presents; he had not any affection whatever, I might as well have been married to a block of stone. He would turn his cheek to be kissed; I tried to be very affectionate, very demonstrative and very agreeable, when he would reply, 'Oh don't worry me.'"

It is not suggested in the record that any physical violence was offered to the wife, or of any denial of any reasonable want, saving and excepting her want for a more demonstrative manifestation of affection.

The testimony falls far short of being sufficient to make out a case of indignities to the person, which under our statutes and decisions could be interpreted as rendering her condition intolerable and her life burdensome, so as to justify her in withdrawing from her husband's habitation. Disappointing as this married life was, there is nothing in our statutes to warrant a decree of divorce on such facts as are disclosed in this record.

The decree is affirmed.