Norman S. White *v.* Beatrice M. White, Appellant.

Argued March 21, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*F. Brewster Wickersham* of *Metzger & Wickersham,* for appellant.

*Elmer E. Erb,* and with him *Philip Sterling,* for appellee.

Opinion by Parker, J., July 14, 1932:

The husband in this action for divorce charged cruel and barbarous treatment and indignities to the person. The lower court found that there was no evidence of cruel and barbarous treatment but awarded a decree on account of indignities to the person of the husband.

The parties were married in Vermont in September, 1922 and after their marriage lived with the parents of the respondent in Riverside, New Jersey, until November, 1924. The libellant, having a respon-

sible position as traveling representative for a large insurance company and his work being in the State of Pennsylvania, the parties in November, 1924 decided to move to Harrisburg, Pennsylvania. In January, 1925 an apartment was rented in that city and while they changed their place of abode to different apartments they continued to live there until sometime in 1929 when the libellant withdrew, alleging that such action was necessary by reason of the conduct of the respondent.

The libellant charges that the respondent against his wishes spent a large portion of her time away from him at the home of her parents in New Jersey; that she left the husband alone in Harrisburg when he was seriously ill; that the respondent was cold and indifferent toward her husband and repulsed all show of affection on his part; that she humiliated him by a display of hatred and contempt in the presence of others; that she was in the company of other men at various times and continued such associations against his remonstrances; that she spoke in contemptuous terms of his mother and ridiculed him for saying prayers and attending church.

The libellant depends very largely upon his own testimony to establish the charges and almost all of this is denied by the wife. The witnesses called by the husband in corroboration of his charges were mutual acquaintances who testified that the wife was cold and indifferent. This testimony, however, showed nothing more than an objection upon the part of the wife to a show of affection in the presence of other persons. The reply of one of the libellant's witnesses illustrates the character of this testimony where he said: "When he was sitting on the davenport along side of her and leaned over and kissed her on the cheek and her response was practically nil, none whatever except coldness and indifference that I could

see—the mere utter placidness and indifference.'' As to the charge of absence on the part of the wife from their common abode, she justified her conduct on account of the husband being away a large part of the time in the performance of his work and her own ill health. Our conclusion is that the wife was not as demonstrative as her husband and that she was at times cold and indifferent and that she remained away from home more frequently and for longer intervals than was justified.

Although the husband complained of his wife's associations with other men, there was not a scintilla of evidence indicating any improper conduct on the part of the respondent towards such men. He complained of her association with one John J. Broughton. This was a young man who had been employed in the same office with the husband and made his home with the parents of the respondent. He was more than ten years younger than Mrs. White and there is nothing to indicate that there was any attachment between the young man and the respondent. The complaint as to association with Dr. Martindale was of the same nature. Dr. Martindale and his wife and the parties to this action had been friends, spending some of their leisure time together and on several occasions, when White was absent, the respondent accompanied Dr. Martindale and his wife to the theatre. There is not anything that suggests any immoral conduct or such conduct as would humiliate the husband. The libellant testified as follows: ''She ridiculed me about going to church and saying my prayers.'' This is a very general statement without any specification as to time or circumstances. We are left in the dark as to whether this was said in anger when there was an altercation of some kind or what caused the remarks. This is denied in the answer of the respondent and is not established by the character of evidence

that is clear and satisfactory. He testified with relation to the charge that she spoke disrespectfully of his mother as follows: "On numerous occasions when there was an altercation between us, she attacked my mother, saying she was a 'devil' and 'common' and that would cut me to the quick. She even reflected on mother's honesty but refrained from it until after mother's death which made it worse." This is positively denied by the respondent and there is here again a lack of specification of time and circumstances which is required in making out a case of this kind. Although he charges her with conduct in the presence of others which tended to humiliate him, the testimony is confined to statements that she failed to reciprocate his affection in public. There is one exception to this where she undertook to cancel a dinner engagement made by the husband. The respondent excused this occurrence on the ground that she should have been invited by the wife of the host instead of the invitation being extended through the husbands. This is too trivial to warrant the granting of a divorce or to add any weight to the other testimony.

As we have indicated the testimony does show that the respondent remained away from their common abode more frequently and for longer intervals than were conducive to happy family relations and there is an incompatibility of temperament existing between the parties. This, however, is not a ground for divorce. The absence from home would constitute desertion rather than indignities. Heilbron v. Heilbron, 158 Pa. 297. "Failure at times to exercise an affectionate disposition" is not a ground for divorce. Katz v. Katz, 102 Pa. Superior Ct. 551, 554; Altwater v. Altwater, 81 Pa. Superior Ct. 359, 361. "The want of forbearance or patience, or an ungenerous and inconsiderate treatment, is very apt to interfere with the affection which should exist between husband and wife.

But the legislature has not stipulated such treatment as grounds for divorce." Rosa v. Rosa, 95 Pa. Superior Ct. 415; Strobel v. Strobel, 100 Pa. Superior Ct. 536, 541. The acts complained of are for the most part acts of omission and not commission and indicate, as we have stated, an incompatibility of temperament. A careful reading of the evidence by all of the members of the court has satisfied us that there was not clear and satisfactory evidence of such indignities "as to render his or her condition intolerable and life burdensome." Mere separation of the parties for intervals and lack of affection are not, under the statutes of this state, such indignities as justify the granting of a divorce. The evidence indicates that the wife has done less to promote domestic harmony than she should have done and that she is responsible in a large measure for the widening breach that has apparently arisen between them, but we are convinced that the libellant has failed to make out a case.

The decree of the lower court is reversed and the libel is dismissed at the cost of the appellee.