Knox, Appellant, *v.* Knox.

Argued March 15, 1933. Before
TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER and JAMES, JJ.

46

*John E. McDonough,* and with him *Wm. J. Mac-Carter,* for appellant.

*Edward D. McLaughlin,* for appellee.

OPINION BY BALDRIGE, J., April 17, 1933:

This libellant seeks a divorce charging cruel and barbarous treatment and indignities.

The parties were married on October 26, 1918, and lived together as husband and wife until October, 1931. The libellant contends that during their entire marital life there were numerous controversies which often terminated in quarrels, and mentions particularly four specific occasions. The first, he alleges, was in February, 1919, when the respondent flew into a temper and became enraged because he refused to take her to a dance. The respondent admits they had a disagreement, but states that it was not accompanied by any serious consequences. He testified that again, in October of the same year, she struck from his hand a glass containing wine which had been offered to him by her father. The respondent's attention was not called to this accusation, but it seems that this incident was of a more or less trivial nature. In the same month, when he was teaching her to drive a Ford automobile, he says she became enraged and attacked him. The respondent denies this charge, which was not corroborated. The most serious quarrel seems to have occurred in October, 1931, when, according to the wife's testimony, the libellant's breath smelled strongly of liquor, and she questioned him concerning his drinking; that he responded with an oath that it was none of her business; and his attitude, when she continued to interrogate him, aggravated her to such an extent that she admittedly did "slap his face." He then attacked her and other blows were exchanged. While we do not commend her action, there appears to

be some reason for her being provoked. It was con-
tended by the libellant that his wife was given to
swearing, frequently manifested a bad temper, inter-
fered with his sleeping, threatened his life, humiliated
him in front of other persons, prevented him from
entertaining company, quarrelled with him at home
and in public places, etc. As to most of these alleged
occurrences, he was not corroborated. Katie Buck,
their colored maid, did substantiate his testimony in
part, but it was apparent that she was not friendly
toward the wife, who had discharged her, the libellant
reemploying her. Raymond Oglesby, a witness for
libellant, who had been at their home on numerous
occasions, testified that these parties had frequent
quarrels; but they were evidently of no great conse-
quence as he said he could not remember very much
about them. In answer to the question as to what had
occurred at meals there, and Mrs. Knox's attitude to-
wards her husband, he said: "Oh, nothing that I know
of except, as I say, sometimes these arguments would
be at meal time. I never saw anything that she had
done to him, anything except arguing." J. Clayton
Bentley, another witness who often called at the house,
testified that Mrs. Knox would contradict her husband
at times and once she objected to the swearing of one
of her husband's friends who was in their home play-
ing cards; but he gave no testimony of any conduct
upon her part to justify her husband's charges. There
were neighbors and others, who at intervals visited
their home, who testified that they had observed no
quarrels or ill-treatment of the libellant by the re-
spondent, or of any conduct that embarrassed or
humiliated him; but they described the libellant as
being "cold," "indifferent," "unsympathetic," and
"surly" toward his wife. These parties entertained
and visited their friends, on which occasions they, as
a rule, maintained an appearance of congenial rela-

tions. Undoubtedly, there was friction, due to the fault of both parties, as the result of a lack of that mutual consideration and affection which should exist in a home. But altercations, even if accompanied by slapping or slight blows, incompatibility of temper, or manifestation of temporary irritation, are too petty and trifling to justify the granting of a divorce. Clear and satisfactory evidence is lacking on which a court could confidently conclude that the marriage should be dissolved.

We are in accord with the learned court below that the evidence does not disclose that the respondent was guilty of cruel and barbarous treatment as to endanger the life of the appellant, or that she offered such indignities to his person as to render his condition intolerable and life burdensome.

Decree is affirmed at the cost of libellant.