## Arnold, Appellant, *v.* Arnold.

Argued April 14, 1937.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

424

*John A. Berkey,* for appellant.

*Budd B. Boose,* for appellee.

OPINION BY JAMES, J., September 29, 1937:

On September 1, 1934 appellant filed a libel in divorce from bed and board alleging cruel and barbarous treatment and indignities to the person. The master was of the opinion that the charge of cruel and barbarous treatment had not been sustained, but recommended a decree on the ground of indignities and awarded alimony of twenty-five dollars per month. Exceptions to the master's report were sustained by the court of common pleas and the libel dismissed.

By section II, paragraph (d) of the Act of May 2, 1929, P. L. 1237, a divorce from bed and board may be obtained by the wife whenever the husband has "offered such indignities to her person as to render her condition intolerable and life burdensome"—the same ground for which an absolute divorce may be granted to the injured or innocent spouse. The proof required in a divorce from bed and board must be as clearly established as in an application for absolute divorce. "Such indignities, we have frequently said, 'may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient': *Breene v. Breene,* 76 Pa. Superior Ct. 568": *Mathias v. Mathias,* 114 Pa. Superior Ct. 444, 174 A. 821; *Kett v. Kett,* 117 Pa. Superior Ct. 236, 177 A. 509.

Upon our independent examination of the testimony, we conclude that the court below was correct in dismiss-

ing the libel, but we do not believe that the happiness of the parties will be promoted by detailing all of the testimony and shall, therefore, only mention what we regard as the high spots. Libellant and respondent, aged fifty at the time of the hearing, were married on October 30, 1913, and for the past fifteen years have lived at Somerset, Pennsylvania. Although since separated, at the time of the hearing libellant was living with her husband and their two children, a daughter, aged eighteen, and a son, aged twenty. Respondent was employed as a laborer by the Borough of Somerset, earning less than $50 per month and was the owner of the home, valued at $2,000, and had invested $6,500 in bonds which had since defaulted. Libellant, who was a highly nervous woman, had not been in good health and had been required to be treated at a hospital on three occasions, the costs being borne by the husband. For the past eight or nine years the parties have lived a rather unhappy life. Libellant charged that her husband, for eight or nine years, had called her vile epithets—unnecessary to be detailed here —which is not disputed by her husband, but since January, 1932 his conduct had much improved. The epithets had been applied during quarrels over the management of the home. She testified that her husband would condemn her for wearing out his shirts in the wash and her efforts to keep the house clean; he refused to allow curtains to hang in his room and would throw them on the floor; crushed dresser scarfs in his hands; rolled the kitchen curtains around the rods when his hands were dirty; if meals were not ready on time he would eat in the cellar; when he ate with his family he pounded his knife on the table, rattled the dishes and slopped on the table cloth; he wanted his clothes washed only when he placed them in the wash, and left his clothes lying around his room; although not a musician, he kept pounding on the piano and when enraged would pound on the stove with his finger; for weeks at a time he re-

fused to talk to her and refused to purchase food for the house unless a list was furnished by her, and he purchased only such as he thought proper; he refused to furnish money for clothing and she was dependent upon the contributions of her father and sister. For three years libellant, on account of her physical condition, had not cohabited with her husband.

In the main both the son and daughter corroborated the mother and both emphasized that much of the discord was due to the refusal of the father to purchase such food and supplies as the mother requested. Two probation officers, one called by libellant and one by respondent, testified they had visited the home on several occasions and found it was above the average and very well kept.

Respondent admitted that he had called his wife some of the epithets during quarrels, which, he claimed, were started by her; that she was constantly nagging him because he failed to keep his clothes and shoes clean and would lay them around anywhere. He further admitted that he did not talk for weeks at a time and did this in order to avoid further quarrels; that his tapping the knife and his finger on the table and stove was because the mother and children frequently sat together and talked so low that he could not hear what they said; that for several years they would not set the table cloth on the side of the table at which he sat and where his food was placed; that he washed and ironed his clothes for more than a year; that his wife refused to indulge in sexual intercourse.

The testimony offered by both parties shows a family relation filled with discord and unhappiness, largely over matters of little moment, yet when emphasized and reiterated cause such serious irritation and quarrels that harmony seldom prevails. We have no doubt that the repetition of vile language would indicate such a plain manifestation of hate and estrangement as to

justify the granting of the divorce; but for more than three years prior to the hearing, the strongest language the husband used was to call her "a black eyed son of a hickory," undoubtedly a mild form of an epithet more commonly used. If we eliminate the language used, we are unable to find conduct on the part of the respondent which may be classified as an indignity. The pounding of his finger on the stove and the one-finger exercise on the piano, most irritating practices, were adopted by respondent as a protest against the conduct of the wife and the children, who maintained an attitude of isolation toward him. His removal of the curtains from the windows and his failure to put his clothes in the wash are not such acts as may be classified as indignities, as they affected him alone. Nor are we persuaded that the insistence of the control of the pocketbook was an indignity. His earnings were small and necessarily required economy of the strictest character, and the worst from which the wife and children suffered was the denial of certain finer food, which their finances would not warrant. His parsimony was evidently not for the purpose of accumulating money, as the record does not disclose that he has any savings, but solely to make ends meet, still a commendable virtue in this age of spending. This habit of economy must be read in the light of the fact that neither the son nor daughter was employed. His control of the pocketbook was further affected by the loss of $6,500 in bond investments. Such a loss to an humble wage earner would discourage and disturb the stoutest heart. It may be too much to expect that the children should have poured oil on the troubled water, as it was natural for them to have been partial to the mother; but the discord was aggravated by their attitude. Another circumstance which added to the unhappy relation was the denial of sexual intercourse by the wife. This we have held is not an indignity to the husband, yet to some

extent it explains the irritable nature of the husband.

Although the testimony presented a most disagreeable attitude of the respondent, it does not establish such a course of conduct as was humiliating and degrading or that indicated a manifestation of settled hate and estrangement. In spite of the many complaints, the wife was still hopeful that happiness would eventually prevail, as when asked if she would continue to live with her husband, replied " I will see." The husband was hopeful that a change would take place and was willing to continue to support the home. Stinginess, surliness, bad temper, irritability and uncleanliness, although provocative of much unhappiness, have never been held sufficient to warrant the granting of a divorce: *Wile v. Wile,* 48 Pa. Superior Ct. 494; *Altwater v. Altwater* 81 Pa. Superior Ct. 359; *Katz v. Katz,* 102 Pa. Superior Ct. 551, 157 A. 362; *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 161 A. 475; *White v. White,* 106 Pa. Superior Ct. 80, 161 A. 463; *Meinel v. Meinel,* 109 Pa. Superior Ct. 143, 167 A. 379; *Conrad v. Conrad,* 112 Pa. Superior Ct. 198, 170 A. 342.

The court below has well stated our conclusion when he said: "Unquestionably, they are very much estranged and their domestic life and relations are anything but happy. Naturally, the children have observed this condition, and have sided with the mother. The libellant is going through a period when she should have the most tender and thoughtful consideration by the respondent. She is nervous and easily irritated; and the husband probably does not appreciate, realize and perform his duties under the circumstances. Unpleasant as their domestic relations have been for the past several years, we do not feel warranted in breaking up this marital relation. As the years mellow and roll on into more advanced life, both libellant and respondent will probably have a better understanding and appreciation

of each other. Under the evidence and the law applicable thereto, we must refuse this divorce."

Decree affirmed.