Troianowski *v.* Troianowski, Appellant.

Argued April 25, 1944. Before KELLER, P. J., BALD-
RIGE, HIRT, KENWORTHEY and RENO, JJ. (RHODES and
JAMES, JJ., absent).

*Samuel G. Wagner,* of *Wagner & Wagner,* with him
*Stanley F. Dobrowolski,* for appellant.

*John J. Cohen,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1944:

The husband in his libel in this divorce case alleged
his wife was guilty of cruel and barbarous treatment,
indignities, and desertion. Judge SOFFEL, who heard
the case without a jury, held that libellant had failed
to establish either desertion or cruel and barbarous
treatment, but granted the divorce on the ground of
indignities. Respondent appealed.

We concur with the conclusion reached by the learned
trial judge, who had the advantage of seeing the parties
and hearing their testimony. We have been mindful
in our careful study of this record that isolated in-
stances of irritable temper and occasional altercations,
even if accompanied by slight blows, are insufficient to
warrant the granting of a divorce on the ground of in-
dignities; that the law contemplates there must be a
course of conduct, a continued treatment of the other

spouse that renders his or her condition intolerable and life burdensome, to constitute the granting of a divorce on the ground of indignities: *Knox v. Knox,* 109 Pa. Superior Ct. 45, 48, 165 A. 769; *Fisher v. Fisher,* 154 Pa. Superior Ct. 497, 503, 36 A. 2d 168; *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350. While general principles are a guide in determining whether a divorce should be granted, the decision in each case necessarily depends upon the varying facts and the particular circumstances: *Davidson v. Davidson,* 127 Pa. Superior Ct. 138, 191 A. 619.

This record discloses that within the statutory period of two years the libellant and respondent lived together for a period of three days in an attempt to reconcile their differences after a hearing was had on August 14, 1941 in a non support case. Libellant testified that his wife wanted him back merely to secure support money which had been suspended, that she ordered him "to sign everything over to her ...... and do everything the way she said or else ...... get out." Even so there had been a cohabitation during that short period and therefore the divorce could not be obtained on the ground of desertion: *Trussell v. Trussell,* 116 Pa. Superior Ct. 592, 177 A. 215. Nor was there proof of such cruel and barbarous treatment as to meet the legal requirements for granting a divorce on that ground.

The parties were married on May 1, 1934, and immediately went to housekeeping on the third floor of respondent's mother's home. The libellant was employed in the advertising department of the H. J. Heinz Company, worked steadily making $125 per month, which he stated he gave his wife. It seems for the first three years of their married life the wife prepared good meals and they got along harmoniously, at least there were no serious marital difficulties. Then, according to libellant, his wife began to nag and accuse him unjustly of running around with other women; to eat downstairs

with her mother, to call his mother vile names, express her dislike for all of his family, and referred to them in very uncomplimentary terms; that she kept aloof and showed a settled aversion toward him; that she stated he was not fit to sleep or live with; "that she would rather eat with a sow rather than eat with me;" refused to prepare his meals so that it was necessary for him three or four times a week to go to his mother's house or to a restaurant to obtain something to eat. She stated that if he did not bring her more money he need not come home to eat. She refused to allow him to bring any friends to their home because they "are a bunch of drunks." The libellant stated that he never drinks. She frequently would refuse to take an automobile ride or accompany him to places of amusement. On one occasion in anger she threw a clock at him when he was in bed. Her version of this incident was that she "tossed" the clock to him as he had called her a vile name and she desired to scare him.

During a strike at the Heinz Company he obtained employment as a mechanic in a garage which he later arranged, with the consent and approval of his wife, to purchase in conjunction with his brother-in-law, who furnished the necessary money. In July 1939, something over a year after the garage had been purchased, his wife and brother-in-law came there and complained of the way he was running the business, and of not giving his wife enough money. The wife stated that they would take over and run the business. After some discussion concerning the possession of the books they both attacked him inflicting bruises, injuring his back, and tearing his clothing. William Wright, who was employed at the garage, testified that while he was not at the immediate locality where the assault was made on libellant, he saw him after the attack washing the blood from scratches on his back. This commotion attracted a nearby policeman and he was ordered by the

wife and her brother to arrest the libellant which the officer, who did not testify as he is now in the armed forces, refused to do. On September 18, 1939, when the libellant came home from work he found his evening meal had not been prepared and there was no food in the house. His wife grabbed from his hands the coffee pot he had picked up from the stove, threw the coffee into the sink and hit him on the head with the top or cap of the coffee pot, and told him to take his bags, which she had previously packed, and, "get out of here and stay out of here, if I ever see you again it will be too soon." She then threw his bags at him and notified him that she was the boss in that house. He stated that this course of conduct upon the part of the wife seriously affected his health which previously had not been very good. While these physical attacks were not of sufficient violence to constitute cruel and barbarous treatment, they may properly be considered with other acts in connection with the charge of indignities. Dr. Frederick B. Utley testified that libellant had a deep perforated gastric ulcer, which would be greatly aggravated by worry, anxiety and unhappy home conditions.

Libellant's sister stated that respondent told her that she didn't know why she married her brother as she didn't care for him and would not go back to live with him; that he didn't make enough money and she would be better off living separate. This witness heard respondent express the same sentiments to libellant's mother. That testimony tends to show her attitude toward him.

The wife testified that her husband was attentive to other women and neglected her; that she found one time in her husband's pockets a letter addressed to him in endearing terms and reference was made to a child which she stated aroused her suspicions that he had been guilty of infidelity. When she found this letter

it was sticking part way out of the pocket of his coat, which he laid on a chair so, as she said, she couldn't miss it. Libellant testified that he had written a letter to himself and placed it in his pocket expecting his wife to find and read it and hoping it might cause her to be more considerate of him if she believed other women regarded him with favor. As the lower court said the explanation seems absurd, but on cross examination the wife admitted the letter was in the handwriting of the libellant.

The wife denied portions of her husband's testimony and asserted in substance that she was always devoted to him and tried to be a good wife; that she cooked for him but he failed to provide money to buy sufficient food as he did not want to work; that she had to furnish her own clothes and that her mother furnished much of the food they ate; and that her husband told her their marriage was only "a fake." Respondent's brother admitted he "grabbed at him and locked his arms" but did not strike him at the time of the garage incident and denied seeing any blood on his shoulders. There was some other slight corroboration of her testimony, but after considering the evidence on both sides of this case we are of the opinion that the domestic difficulties were due to the conduct of the wife, and that the account of their married life as narrated by the husband is substantially true and that the acts complained of were not occasional occurrences, but constituted a course of conduct such as to seriously affect his health and subjected him to treatment, which rendered his condition intolerable and life burdensome.

The decree of the lower court is affirmed at appellant's costs.