## Commonwealth ex rel. Whitney *v.* Whitney, Appellant.

Argued November 21, 1946. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH and ROSS, JJ. (HIRT and ARNOLD, JJ., absent).

*Manus McHugh,* with him *Victor J. Roberts* and *High, Swartz, Flynn & Roberts,* for appellant.

*Margaret W. Corson,* with her *H. Lester Haws,* for appellee.

OPINION BY ROSS, J., January 17, 1947:

This is an appeal by a husband from an order for the support of his wife. The parties were married on May 6, 1922, and lived together until February 1946 when the wife went to a hospital in Philadelphia for treatment. When she was discharged from the hospital on March 5, she did not return to a third floor apart-partment on 44th Street, Philadelphia, where the parties had been residing, but went to a hotel for a short period of time and then moved to Haverford, Montgomery County, where she is presently living. The husband continues his residence on 44th Street. On April 5, 1946, the wife made an information against her husband under section 733 of the Act of June 24, 1939, P. L. 872, 18 PS 4733, which provides for the support of a wife by a husband if he ". . . separates himself from his wife . . .

without reasonable cause, or neglects to maintain his wife . . .". After hearing, the lower court entered an order requiring the husband to pay $175 a month for the support of his wife, and this appeal was taken.

The amount of the order is not involved in the appeal and the only question before us is whether under the evidence in this case an order for support should have been entered, the appellant husband contending that he is not liable for a support order for the reason that his wife left the marital residence and refuses to return to it.

The wife, 52 years of age, has been a diabetic for years, this condition has become more acute and she requires a special diet and daily injections of insulin. In 1942, she underwent an exploratory operation to determine whether she had cancer and her operation in February 1946 was temporarily delayed because of her diabetic condition. Her physician has advised her against climbing stairs and this she assigns as one of her reasons for not returning to the third floor apartment and instead going to the hotel "to recuperate". The appellant is a vice president of the Petrol Corporation, earning $12,320 yearly. His duties are director of sales, labor and public relations and entertaining for the company; much of the time he travels, calling on 65 dealers in the Philadelphia territory and entertaining them in Philadelphia and in their own home towns. The parties have a daughter 23 years of age who, until her marriage, lived with her parents but who left the home in February 1945 and now resides in her own home.

The purpose of a support order is to secure an allowance for the wife which is reasonable and proper for her comfortable support and maintenance, having in view the property, income and earning capacity of the husband and their condition in life. *Commonwealth ex rel. Barnes v. Barnes,* 151 Pa. Superior Ct. 202,

30 A. 2d 437. The only reasonable cause justifying a husband in refusing to support his wife is conduct on her part which would be a valid ground for a decree in divorce. *Commonwealth ex rel. Goldstein v. Goldstein,* 105 Pa. Superior Ct. 194, 160 A. 158; *Commonwealth v. Henderson,* 143 Pa. Superior Ct. 347, 17 A. 2d 692. It is clear from a reading of the record that the appellant has no grounds for divorce and he does not so contend or intimate. However, to justify the wife's withdrawal from the matrimonial habitation and her refusal to live with her husband, she must have reasons which are sufficient to enable her to secure a divorce if she should seek it. A spouse is justified in withdrawing from the family relation where the cause is such as would sustain a dissolution of the marriage bond if application were made therefor. *Andrew v. Andrew,* 143 Pa. Superior Ct. 68, 17 A. 2d 673. The withdrawal by the wife from the common domicile and cessation of marital relations imposed upon her the burden of proof to establish by the preponderance of the evidence facts that would entitle her to a decree of divorce or that the separation was by consent. *Ewing v. Ewing,* 140 Pa. Superior Ct. 448, 14 A. 2d 149. In this case, the wife's position is that appellant's treatment of her consisted of indignities to her person such as rendered her condition intolerable and life burdensome and would entitle her to a divorce.

In *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 161 A. 475, this court has said: "The law does not define the word indignities and its meaning depends largely upon the circumstances of each case, but it has been certainly determined by the appellate courts of this State that it must consist of such a course of conduct as is humiliating and degrading, inconsistent with the position of a wife, thereby rendering her condition intolerable and life burdensome." Nearly a century ago (1848) our Supreme Court, speaking through Mr. Justice COULTER, in *Elmes v. Elmes,* 9 Pa. 166, stated: "To

render the condition of a wife intolerable, and her life burdensome, it is not necessary that there should be blows, or cruel and barbarous infliction of batteries that endanger her life. There may, without that, be such indignities to her person as to render her life a burden. The husband is bound to the observance of duty to his wife; and as marriage is founded on the original constitution of the sexes and dignified by strong and peculiar sentiments of affection, delicacy and honour, all treatment which violates these principles, habitually and constantly . . . must render a woman's condition intolerable, and her life burdensome." No single act of indignity to the person is sufficient cause for a divorce; there must be such a course of conduct or continued treatment as renders the wife's condition intolerable and life burdensome. The indignities need not be such as to endanger life or health; it is sufficient if the course of treatment be of such character as to render the condition of any woman of *ordinary sensibility* and *delicacy of feeling* intolerable and her life burdensome. *Lynn v. Lynn,* 76 Pa. Superior Ct. 428; *Krug v. Krug,* 22 Pa. Superior Ct. 572.

Approximately 12 years ago, the appellant stopped speaking to his wife. From that time until the separation, there was "complete silence on his part" and he completely ignored her not only when they were alone but when they were in the company of others. When it was necessary for the appellant to communicate with her, he did so by note or through third parties. During those 12 years, the parties have occupied separate bedrooms. Before he stopped speaking, the appellant took his wife for automobile rides, on vacations, and out for meals. Since that time, he has done none of these. He testified that he had not offered to take her any place with him and that "I asked her to go nowheres" and before that "I had taken her to many places".

The wife testified that when the appellant first stopped talking to her, she asked him the reason and he said, "When the time comes to discuss it, you get your lawyer and I'll get mine", and that he has never given her any other reason. The appellant does not admit making that answer, but when questioned relative to it replied, "I don't remember". The appellant seeks to excuse his treatment of his wife—none of which he denies—on two grounds. One, that the wife brought into their home to live a friend of hers, a Mrs. Dix and the latter's daughter. He objected to his wife about this arrangement but said nothing to Mrs. Dix about it, apparently acquiesced in it later and made no effort to get the Dixes out of the home. The testimony shows that he spoke to his wife only occasionally before Mrs. Dix came to the household and it is undisputed that for the year preceding the separation Mrs. Dix did not reside with them, so if she was the reason the appellant had a year in which to change his attitude. He gives as the second reason the fact that 11 years before he had invited his wife to make a social call with him upon the president of the corporation by which the appellant was employed, and that she refused to accompany him. We can only comment that is a long time to hold spite and certainly does not excuse—from a legal, social or moral standpoint—the treatment he accorded his wife.

The record shows that the wife for the last 11 or 12 years of her married life has been treated with studied and deliberate neglect, incivility and disdain, and we are of the opinion that the appellant was guilty of such a course of conduct to his wife as to entitle her to a divorce on the ground of indignities to the person, and therefore such as to justify her withdrawal from the matrimonial habitation and her refusal to live with the appellant. The statement of President Judge HOR-ACE STERN (now Mr. Justice STERN) in *Clements v. Clements*, 21 D. & C. 661, is applicable to the instant

case. In that case Judge Stern stated: "We therefore have a situation where, at least for an entire year previous to the respondent leaving, the husband neither slept with her, ate with her, talked to her, went out with her socially, or showed any desire whatever for her companionship, but, on the contrary, made plain to her that, so far from loving her or even being willing to be civil to her, he had no feeling toward her other than one of hatred and detestation. . . . Each time that the libellant refused to talk to her or eat with her or recognize her as a human companion, he was guilty of an indignity to her. Moreover, a mental and spiritual separation brought about by him had occurred long before the physical withdrawal from the home."

Order affirmed.