Porter, Appellant, *v.* Porter.

Argued April 18, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Charles G. Notari,* for appellant.

*S. V. Albo,* for appellee.

OPINION BY ROSS, J., July 17, 1947:

In this divorce case, the libellant husband has appealed from the refusal of a divorce sought on the ground of indignities. The case was heard by the court below without a jury.

The parties were married in 1918 when the libellant was 15 years of age and the respondent 16. With the exception of a short period of separation three months after they were married, the parties lived together as husband and wife until March 4, 1945, when the husband withdrew from the marital habitation. Four children were born to the parties, three of whom, aged 26, 23 and 17, testified on behalf of respondent. The youngest child

—a girl of grade school age—was not present at the trial.

According to the testimony of libellant, he was subjected to constant verbal abuse by the respondent during the entire period they lived together. He testified that she called him vile names continuously, when they were alone and when the children were present; that she used the same kind of language "to the children", "to everybody"; that she threw things at him—vases, knives and "everything else she could get her hands on"; that "she didn't only throw at me but she threw at the children"; that many times she beat the libellant's mother, who resided in the home for approximately 25 years preceding her death, including "a few days before my mother died when she was unable to get out of a chair". Without reciting more of libellant's testimony, it is clear from a reading of the record that, as stated by the learned court below, "The libellant, if his testimony is accepted, made out a very strong case of indignities". An aunt of the libellant testified that respondent frequently called the libellant vile names and used similar language "to her children". She also testified that she saw marks on the libellant and on his mother.

All of the material parts of the libellant's testimony were denied by the respondent. She was corroborated in many particulars—and contradicted in none—by the children. The husband contends that the testimony of the children is negative because they testified that they "did not hear the vile language" or "did not see" the respondent throwing things or beating libellant's mother. However, they were members of the household and if the respondent were as intemperate and profane as the libellant attempted to paint her, they could not escape hearing or seeing some of the things which, according to the libellant, occurred in that household, particularly since libellant testified that the respondent used vile language "to the children", "to everybody", and that she "threw at the children".

The respondent testified that with exception of a few months immediately after their marriage she and the libellant "got along grand" . . . "got along fine" until he went to work at the American Bridge Company in 1943, where he was assigned a helper, Mary Ruffner, whose husband then was in the Army. It is obvious from the testimony that the respondent blames libellant's association with Mary Ruffner for his withdrawal from the home and for his desire to secure a divorce.

A determination of this appeal depends—as do so many contested divorce cases—upon the credibility of witnesses. Although we are required to consider all the evidence and arrive at our own conclusion thereon—which we have done—the conclusions of the trial judge, who heard the testimony and saw the witnesses, are entitled to careful consideration on appeal and will not be lightly disturbed. *Othmer v. Othmer,* 158 Pa. Superior Ct. 384, 45 A. 2d 389; *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609. Obviously, the trial judge was of the opinion that the libellant's testimony was not credible and from a reading of the record we can find no reason for disturbing that conclusion. The libellant would have us believe that the alleged treatment accorded him by his wife continued for a quarter of a century and that he had, after over two decades of domestic martyrdom, decided that he could stand it no longer, his decision coinciding strangely or otherwise, with his meeting Mary Ruffner.

The trial judge in his opinion stated, inter alia, "The Trial Judge was particularly impressed by the testimony of the children, who impressed him as being well worthy of belief. He was also impressed by their conduct as they sat in the court room throughout the trial."

A review of the testimony in this case, including particularly the testimony of libellant's children, convinces us that the denials of the respondent as to her alleged misconduct are worthy of belief and that there are no convincing circumstances which will warrant disre-

122

garding the respondent's evidence. *Cobaugh v. Cobaugh,* 146 Pa. Superior Ct. 521, 22 A. 2d 764. It is incumbent upon a libellant to establish his case by clear and convincing evidence (*Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350) and it is our opinion that the libellant has not made out his case.

Decree affirmed.