Raney, Appellant, *v.* Raney.

Argued March 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Dwight P. Thompson,* for appellant.

*Bertram Bennett,* with him *Harry L. Jenkins* and *Jenkins, Bennett & Jenkins,* for appellee.

OPINION BY ROSS, J., July 17, 1952:

This is an action in divorce brought by the wife. The case was referred to a master who, after hearings, recommended that plaintiff be granted a divorce on the ground of indignities. The court below rejected the recommendation of the master and dismissed the complaint. From the decree dismissing her complaint the plaintiff has appealed.

The parties to this action have been married twice, their first marriage having ended in divorce in January 1945. Two children were born of the marriage: Elizabeth Ann, born December 16, 1928, and Evelyn Nixon, born May 23, 1931. The defendant had been an alcoholic, but at some time between the divorce and June 1947 he stopped drinking entirely. Plaintiff testified that she heard "through different sources and through

him [defendant] that he was not drinking, and he was willing to come back and be fatherly and kindly to the girls, and that he would make up for the things that he had done and said". She remarried defendant on June 7, 1947 because "I thought he was sincere and meant what he said". The parties lived together until January 11, 1948, when the plaintiff left the marital habitation.

Plaintiff testified that three weeks after the second marriage: "There was a sudden change in his whole manner. He just didn't talk, and he didn't seem interested, and he went to bed and closed the door. And if you asked him a question, he just grunted, and he was displeased, and his actions were—well, they were just unfriendly and unsociable, and that is when it first started," When later plaintiff was asked what defendant's attitude toward her was, she answered: "Well, his whole attitude was—it was unkind, and it was just almost—well, he didn't notice you, if you know what I mean. He came into the house, and sometimes I didn't know he was in there. He just went upstairs and closed the door, and I went in and I said, 'Oh, are you home?' I didn't know that he was home. He just ignored you." A specific incident related to demonstrate defendant's unsociability occurred on Christmas 1947. On this occasion after presents had been exchanged, defendant retired to his room and "stayed there all day, and we didn't see him again until dinner time". The defendant admits going to his room and suggests two explanations for doing so. He testified that it was a family custom to play Christmas records on Christmas morning and that his daughter Betty angered him when she insisted on replacing those records with some she had received from a friend as a gift. Defendant testified further that he may have gone to his room because he was tired after being up late on Christmas Eve.

Thus it would appear that plaintiff's principal complaint is that her husband was indifferent and unsociable. Such negative conduct does not amount to indignities unless carried to extremes, as in *Com. ex rel. Whitney v. Whitney*, 160 Pa. Superior Ct. 224, 50 A. 2d 732, or in *Clements v. Clements*, 21 D. & C. 661. Silence maintained for 12 years as in the *Whitney* case or for one year as in the *Clements* case may, of course, be some evidence from which an inference of settled hate and estrangement may be deduced. In this case only about 7 months elapsed between the date of the marriage and the final separation and the parties continued to have sexual relations until October 1947. There is no contention that the defendant maintained silence over any protracted period of time. The present case is more like *Dyer v. Dyer*, 166 Pa. Superior Ct. 520, 72 A. 2d 605, in which case, at page 521, we stated: "Libellant's principal complaint is that the respondent gave him 'silent treatment' when displeased with him, by refusing to talk with him for periods varying from a few hours to a number of days. However viewed, the negative conduct of the wife in this case does not charge her with a malevolent disposition nor with settled hatred of her husband."

The evidence of affirmative acts of misconduct on the part of the defendant is as follows.: On one occasion the plaintiff came home and wished to tell defendant where she had been and what she had been doing. She testified that he said, "Oh, shut up. I am not interested in where you were." On another occasion plaintiff, defendant and the two girls planned to go on a picnic. Before they were ready to go, however, defendant and his daughter Betty argued over some trivial matter and the plaintiff refused to attend the picnic. Defendant said to plaintiff, "Go ahead and make an ass out of yourself; I don't care." Plaintiff and defendant attended an informal meeting of re-

formed alcoholics at the home of one of them. The purpose of the meeting apparently was to give advice and comfort to the wife of an alcoholic who had resumed his drinking habits. When divorce was mentioned as a possible solution of the woman's difficulty, defendant stated, "Any woman that leaves a man for excessive drinking is crazy", and turning to his wife, "You are a fool for having left me." Defendant made a trip to New York and one to Newark which caused some friction. Before the New York trip, defendant called his wife on Friday to tell her that he was going and that he would return Saturday night or Sunday morning. Upon his return Sunday morning, the plaintiff asked him where he had been. She testified that he replied, "It's none of your damn business." When defendant returned from the Newark trip, plaintiff testified that he said, "It is none of your damn business where I was. I had companionship and I had fun, and I did some good. You can go your way and I will go mine, like I have been doing." The plaintiff does not even *suggest* that there was anything *improper* about these trips. Plaintiff testified that the defendant never "manhandled" her in "any way", and she stated that there was not constant quarreling nor cursing; instead "there were silences". She did complain, however, that the defendant called her "dumb", "lousy tripe" and several times told her to "shut up". In *Bock v. Bock,* 162 Pa. Superior Ct. 506, 58 A. 2d 372, the husband said to the wife-plaintiff, ". . . why don't you shut up?" This circumstance is brought to our attention by the plaintiff with the comment that in the instant case the defendant told his wife to "shut up". That the conduct of the defendant in the *Bock* case went far beyond admonishing his wife to silence is quite clear. We said of the defendant's conduct, at page 509: ". . . it is clear that the respondent was domineering, arrogant and contemptuous of his wife and apparently during the time

the parties lived together . . . made every effort to ridicule her and to hold her up to disdain, not only when the parties were alone but in the presence of visitors to the house." In addition there was testimony that the husband called his wife vile names, accused her of infidelity, threw things at her, and threatened her with physical violence. The similarity between the *Bock* case and this case lies *only* in the fact that each husband told his wife to "shut up" and this hardly makes the cases analogous.

"Bad temper, surliness, disagreeable disposition and antagonistic attitude have never been held sufficient to establish the charge of indignities." *Campbell v. Campbell,* 129 Pa. Superior Ct. 106, 112, 194 A. 760. In *Wile v. Wile,* 48 Pa. Superior Ct. 494, the wife's principal grievance was that her husband's treatment of her was *negative* and humiliated her. She testified: "He was brusque, curt, moody, had a queer disposition; his manner was not gracious; he was bored, as if it was an effort for him to talk. He never brought any presents; he had not any affection whatever, I might as well have been married to a block of stone. He would turn his cheek to be kissed; I tried to be very affectionate, very demonstrative and very agreeable, when he would reply, 'Oh, don't worry me.'" We said in that case, at page 496: "The testimony falls far short of being sufficient to make out a case of indignities to the person. . . . Disappointing as this married life was, there is nothing in our statutes to warrant a decree of divorce on such facts as are disclosed in this record."

We have repeatedly stated that to sustain the granting of a divorce on the ground of indignities the evidence must show a course of conduct showing settled hate and estrangement. The evidence in this case does not meet this test, and our divorce statutes and decisional law do not countenance the granting of a divorce

where, as here, the evidence shows only trivial occurrences which cumulatively amount to no more than incompatibility.

The decree dismissing the complaint is affirmed.