## Putt v. Putt, Appellant.

Argued March 15, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*Victor Braddock,* of *Braddock & Sohn,* for appellant.

*William H. Earnest,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

This was an action of divorce brought by a husband against his wife on the grounds of (1) cruel and barbarous treatment, endangering his life, and (2) indignities to his person such as to render his condition intolerable and life burdensome.

The master recommended a divorce on both grounds. The court approved the report of the master and granted the divorce. The respondent appealed.

At the outset we may say that while the law of this State is liberal as to the number of grounds for which a divorce may be obtained, it is strict as to the requirement of proof necessary to obtain it. The ground or grounds alleged in the libel must be clearly established by the evidence in order to warrant a decree of divorce.

The evidence of cruel and barbarous treatment, endangering libellant's life, produced by libellant, was confined to (1) a charge that respondent had hit him on the head with a skillet six or eight years before; (2) that she had struck him with a glass hair receiver in July, 1932; (3) that she had come into his room at night, in August, 1932, when he was sleeping and attacked him and choked him; (4) that she had threatened to kill him in July, 1932, and poison him in September, 1932, so that he was afraid to live with her. The respondent vigorously denied all these charges, except the first. No one else was present at any of the alleged occurrences, and libellant's story is not con-

vincing to us. He failed to produce witnesses, who, he testified, were present when the threats were made; and on the other hand, his own letters, hereinafter referred to at more length, discredit his testimony as to respondent's threats and his fears of living with her. His mother's testimony that she saw a scab on his head in August, 1932, does not corroborate his evidence that his wife attacked him three days before and caused it. The respondent admitted having hit him with a skillet, in 1925 or 1926, but her version of the occurrence excuses it. A man who unjustifiably calls his wife a whore must expect some impetuous manifestation of her just resentment; and we do not think the retaliation in this instance was excessive. The evidence does not establish actual personal violence or reasonable apprehension of it, such as to endanger his life and render cohabitation unsafe, which is necessary for a divorce on the ground of cruel and barbarous treatment endangering one's life: Auerbach v. Auerbach, 98 Pa. Superior Ct. 369, 372; Welfer v. Welfer, 54 Pa. Superior Ct. 215; Krug v. Krug, 22 Pa. Superior Ct. 572, 573.

Coming then to the charge of personal indignities, we have carefully read all the testimony, twice, and after giving weight to the fact that the master saw and heard the witnesses testify, we are unable to agree with his findings.

It is not necessary to discuss the alleged indignities in detail. They fall far short of the proof necessary for a divorce in this state. Here, again, the libellant was uncorroborated except by his mother, and her testimony did not corroborate his evidence as to the respondent's alleged indignities to his person, but was for the most part confined to alleged statements of the respondent that she was through with the libellant and would not live with him. If the respondent was guilty of the indignities which the libellant alleged, someone

should have been produced who could substantiate his evidence. His mother said she never heard them quarrel. "I think they always did that in the privacy of their own home" (p. 23a).

The respondent, on the other hand, denied all the serious accusations of the libellant. She admitted having words with him, during which both of them spoke heatedly and called each other names, but alleged that these occurrences took place when he had been drinking and was irritable and unreasonably critical. She was supported by some disinterested witnesses, who put more of the blame for these family quarrels on the husband than on the wife. The evidence, as a whole, fails to establish clearly a course of conduct on the part of the respondent which manifested a hatred of and estrangement from the libellant, and was expressed in indignities to his person such as to render his condition intolerable and life burdensome: Mullen v. Mullen, 115 Pa. Superior Ct. 300, 301, 175 A. 710. On the contrary it falls rather within the line of cases best illustrated by Esenwein v. Esenwein, 312 Pa. 77, 167 A. 350, affirming 105 Pa. Superior Ct. 261, 161 A. 425, where it was held that indignities provoked by the complaining party are not ground for divorce unless the retaliation is excessive; that available corroboration must be produced; and that general expressions of complaint are of no value unless accompanied by reference to specific incidents.

The most telling disproof of the libellant's testimony may be found in his own letters to the respondent. Although his libel charged that the respondent's unwifely conduct began in September, 1930, and continued to the date of the filing of the libel—June 19, 1933—and his testimony on the stand placed it some years farther back, yet between June 10, 1932 and January 11, 1933, he wrote respondent seventeen letters, all of them beginning, "Dear kid," and closing

"Lovingly" or "With love" or "Lots of Love,"— "Harry." They stated that he would be home as soon as his work was over, or over the week-end, or "most any time," and contain no evidence of unfriendliness or dissatisfaction. They were unstudied and without premeditation and were written during the very period of which he now makes chief complaint. They are so friendly in tone as to effectually refute the charge that his condition was then intolerable or his life burdensome.

The decree is reversed and it is ordered that the record be remitted to the court below, and a decree be entered dismissing the libel, at the costs of the libellant.