Friess, Appellant, *v.* Friess.

Argued March 13, 1944. Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*S. Regen Ginsburg,* for appellant.

*Lionel Teller Schlesinger,* for appellee.

OPINION BY JAMES, J., September 28, 1944:

Libellant husband appeals from a decree of the court in banc which disapproved the recommendations of the master to grant a divorce on the ground of indignities to the person, and dismissed the libel. Our reading of the testimony sustains the decision of the court.

Our Divorce Law explicitly provides that the indignities offered to the person of the injured and innocent spouse must "render his or her condition intolerable and life burdensome," in order to suffice as grounds for divorce. Act of March 19, 1943, P. L. 21, §1, 23 P. S. §10(f). It has been repeatedly held, that in considering whether a divorce should be granted upon the ground of indignities, the law does not concern itself with isolated occurrences; it contemplates a course of conduct or continued treatment, not single acts separated by long intervals of time: *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350. ...... Moreover, there must be evidence from which an inference of settled hate and estrangement may be deduced. *Davidsen v. Davidsen,* 127 Pa. Superior Ct. 138, 142, 191 A. 619; *Martin v. Martin,* 154 Pa. Superior Ct. 313, 35 A. (2d) 546.

With the law clearly settled, the duty of this court is to decide whether libellant has adduced "clear proof of imperious reasons" *Dailey v. Dailey,* 105 Pa. Superior Ct. 461, 466, 161 A. 475, that the behaviour of

the respondent overstepped the bounds fixed by the Divorce Law. Without attempting a full resume of the voluminous testimony, an outline of the case presented by the libellant should suffice to explain why, in our opinion, it is insufficient in detail and in credibility.

Libellant and respondent, then aged 21 and 24 years respectively, were married in Philadelphia on March 3, 1917, and lived in the city and in the nearby vicinity until September 16, 1939, when libellant left the home, after which time no efforts at reconciliation were made. An only child, a daughter aged 22 years at the time of the separation, continued to live with the mother. The libellant alleged cruel and barbarous treatment and indignities. No proof of cruel and barbarous treatment was established and our discussion will be confined solely to the question of whether the charge of indignities to the person was sustained.

Many of the complaints center around a period of seven months in 1920, when libellant was operating a bakery business. Respondent neglected her duties in the shop, refused to prepare meals for her husband and the help, failed to keep the house clean, visited her relatives three days each week, and falsely accused her husband of being "out" with women. Perhaps the key to the dissension was repeated by libellant's brother, who quoted respondent: "It's your business; you take care of it; you make a success of it. You bought the store and said you could make a go of it." Respondent was not enthused by the prospect of managing a pastry shop and thus failed to play the role of willing helpmate with the zeal her husband expected. At any rate, evidence of settled hate is non-existent, and life was more miserable without than with her, as libellant made haste to terminate a brief separation.

The years 1921-1937 were marred by some small difficulties and two serious misunderstandings. Manifestations of unjustified jealousy on widely separated

occasions; the use of "damn" or "hell" in moments of anger; the keeping of a secret private account in the bank, later placed in a joint account—these are the most important of the minor imperfections of which respondent was guilty. Suffice it that the jealous remarks were privately expressed; the particular terms of invective seem to have been more or less commonplace, while the money on deposit respondent claims to have earned. These are not uncommon ripples which disturb the sea of matrimony. Alone or together, these few incidents are incapable of making the life of any normally sensitive man so miserable as to make conditions intolerable and life burdensome.

It is quite true that respondent displayed an aloofness to the members of the husband's family which is in sharp contrast to the loyalty shown her sister and mother. Without doubt, instead of joining his family circle, she persuaded him to associate with hers. On at least three occasions, in-laws were coldly, if not rudely, received; libellant's relatives visited seldom, stayed briefly, and never slept over. She rarely called upon them and the visits at his parental home were limited in time. On one occasion, respondent exhibited unseemly haste to leave the bedside of a sick father-in-law. On the other hand, the fact is that in times of need libellant and his family lived with respondent's folks, and for long periods of time—near them, and on the whole libellant seldom protested the treatment his folks received. The record discloses that respondent was and still is friendly with libellant's mother. As long as social proprieties are preserved and each spouse has full freedom to see his relatives at will, this court cannot calculate the delicate forces which have pulled husband or wife into one group rather than another, and affix blame-worthiness to the conduct of either spouse, especially where dissatisfaction with the result seems never to have been expressed by the presently complaining party.

The most seriously urged charge is that the respondent neglected her home and husband constantly, even when he was in poor health. As libellant testified, respondent spent days, even months, at the home of her sister, Mrs. Shilling, refusing to prepare meals or clean house, until the carpets became mildewed and libellant faced the dubious choice of dining out or eating warmed-over food. Indeed, while his wife was tending the Shilling store, libellant was forced to board out, leading eventually, as he testified, to a serious goiter condition and intestinal sickness  Nevertheless, we prefer the comments of the lower court: "It is ......
to be noted that about ten years of this time the sister lived across the street from the parties. ...... There was no doubt that there was a close friendship between libellant and his brother-in-law, Mr. Shilling, and that during a large part of the twenty-two years in question he played cards there several times a week and had many meals there. ...... There is very little testimony to the effect that he ever seriously complained of the situation, except that he did not like the warmed-over meals. ...... We feel rather that he accepted the situation and, for the greater part of his married life, enjoyed it, and even profited from it to some extent.
...... Without medical testimony we cannot accept libellant's unsupported statement that his wife's conduct was responsible for his poor physical condition."

Serious misunderstanding arose in 1937 when the libellant became a frequent visitor at the residence of his neighbors, the Oesterles. Both wife and daughter suspected the feelings of libellant for the Oesterle daughter, and when they expressed their thoughts, the gap widened. In the meantime, the friendship of libellant for the Shillings cooled and respondent's continuous visits to her sister's with the attendant uncooked meals and cold house were resented. He objected to the renting of an apartment, and he believed that the

front doors were locked in spite. By June, 1939 sexual relations terminated, and the final separation occurred three months later during an argument growing out of an accusation by respondent that libellant's brother was running around with his first wife.

However damaging the libellant's testimony touching this period, since it is denied by the respondent and her daughter, it creates only a doubtful balance of evidence. "A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out." *Rommel v. Rommel,* 87 Pa. Superior Ct. 511, 513; *Twaddell v. Twaddell,* 95 Pa. Superior Ct. 429, 432; *Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 499, 171 A. 419. While the respondent contained her suspicions within the family circle, the libellant acted unwisely to create idle gossip which, though unwarranted, must have caused embarrassment to his wife and daughter. Undoubtedly, respondent is deserving of severe censure for trying to destroy the happiness of libellant's brother and sister-in-law, but an accusation of misconduct against a member of libellant's family did not, of itself, constitute an indignity to him.

This is the case substantially proven by the libellant; respondent denies or qualifies every important accusation. Though the recommendations and observations of the master are worthy of the fullest consideration, since he has the advantage of seeing the parties and hearing the testimony, his impression that libellant and his witnesses gave the more honest, least biased version cannot control our appraisal of the weight and credibility of the testimony. *Wittmer v. Wittmer,* 151 Pa. Superior Ct. 362, 30 A. (2d) 174; *Menster v. Menster,* 136 Pa. Superior Ct. 582, 7 A. (2d) 541; *Fishman v. Fishman,* 134 Pa. Superior Ct. 217, 4 A.

(2d) 543. Due weight to the testimony offered by the respondent further weakens libellant's case.

An independent consideration of the evidence fails to reveal clearly a course of conduct, motivated by a spirit of hate or estrangement, sufficient to make life burdensome. Respondent was often unjustified, sometimes moved by the feelings of jealousy, but against a background of twenty-two years of married life, the summation of incidents do not add up to a settled stream of behaviour fed by the fire of hate. "A wife may be a poor help-mate, she may be a careless housekeeper or even a slattern; she may not give proper care to her child; she may be nagging in disposition and a fault-finder, she may be lacking in affection, she may be a malingerer or neurasthenic, but all these matters have little or no bearing or relevancy to the charge alleged in the libel, viz: indignities to the person such as to justify the granting of a divorce." *Meinel v. Meinel*, 109 Pa. Superior Ct. 143, 147, 167 A. 379.

Under all the testimony we are not convinced that sufficient cause has been established to warrant a decree. Such imperfections and weaknesses of character and disposition as the record discloses may be the "for better or worse" assumed when the marriage knot is tied, but they are not such acts as are strictly within the grounds provided by statute.

Decree dismissing libel is affirmed.