## Monaco, Appellant, *v.* Monaco.

Argued October 30, 1946. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*Zeno Fritz,* for appellant.

*Henry Kauffman,* for appellee.

OPINION BY RHODES, J., January 17, 1947:

Libellant set forth in his libel two grounds on which he sought a divorce from respondent—indignities to the

person, and cruel and barbarous treatment. Respondent filed an answer to both the libel and the bill of particulars. The evidence was presented to the court below without a jury, and from the dismissal of the libel libellant has appealed to this court.

The parties were married on July 1, 1936, at Pittsburgh, Pennsylvania. At that time libellant was twenty-nine years of age, and a practicing dentist, and respondent was twenty-seven years of age. One child, a son, was born to the parties on December 31, 1937. After their marriage they lived in Pittsburgh until libellant enlisted in the United States Army in July, 1942. After his discharge, as a Lieutenant Colonel, he returned to his home on December 18, 1945. He left their common domicile on January 19, 1946, and filed his libel on February 1, 1946.

Libellant, on this appeal, does not press the charge of cruel and barbarous treatment, but contends that he is entitled to a divorce from respondent on the ground of indignities to the person. His complaints may be enumerated as follows: That respondent's attitude toward members of his family was the cause of recurring difficulties; that respondent wrote an abusive letter accusing him of marital infidelity; that she threatened to kill herself; that she had a revolver on one occasion, which he took from her; that she accused him of having a venereal disease; that she hit him; and that she generally harassed him.

We have repeatedly said that it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable and his life burdensome. *Hahn v. Hahn,* 135 Pa. Superior Ct. 39, 41, 4 A. 2d 821. The circumstances of each case must largely determine whether the acts charged amount to such indignities as will justify the court in making a decree of divorce. However, indignities to the person, as recognized by the law, have certain

fundamental characteristics which must be recognized in the appraisal of the evidence. In the first place, the indignities must consist of a course of conduct on the part of respondent. That conduct must have rendered the condition of the libellant intolerable and life burdensome; and there must be evidence from which an inference of settled hate and estrangement may be deduced. *Davidsen v. Davidsen,* 127 Pa. Superior Ct. 138, 142, 191 A. 619. An isolated incident cannot constitute indignities to the person. And of course the indignities of which libellant complains shall not be such as he himself has provoked. *Putt v. Putt,* 118 Pa. Superior Ct. 74, 78, 180 A. 92.

We have reviewed the record, as we are required to do, in order to learn whether a legal cause for divorce has been established. *Knapp v. Knapp,* 152 Pa. Superior Ct. 412, 417, 33 A. 2d 88. In the present case our independent examination of the evidence brings us to the conclusion that libellant has not clearly established a course of conduct on the part of respondent which entitles him to a decree. Both parties may have offended against the established proprieties that are expected in the marital relation, and their conduct may not always have been above reproach. But respondent's conduct between December 18, 1945, and January 19, 1946, upon which libellant's case must largely rest, cannot, in view of libellant's own attitude, be said to constitute indignities to the person of libellant, and thus entitle him to a decree of divorce on that ground. The court below in its opinion has clearly stated the controlling factors in this case: "It is clear from a reading of the testimony that libellant was determined, when he returned from service, to rid himself of his wife. Practically all of her misconduct during the month which intervened between the libellant's return and the filing of this libel is directly traceable to the misconduct of libellant toward his wife. It is also clear that respondent

was most anxious to resume the marital relation and that a happy home could have been set up again had it not been for libellant's attitude.

"There is nothing to indicate that respondent's attitude was one of settled hate and estrangement, that her conduct was repeated and continuous or that her misconduct was unprovoked by libellant's attitude."

We find no substantial reason for libellant to complain of respondent's conduct from the time of the marriage in 1936 until libellant entered the military service in 1942. During this period they lived at various places in Pittsburgh and cohabited without any serious marital disturbances. The testimony, although extensive in relation to those years of their marital life, does no more than disclose that respondent was unable to live in peace and happiness with libellant's family. This result is common and is not unexpected. It was libellant who insisted on the association. For about a year libellant and respondent lived with his mother and his sister. Libellant realized the unpleasant situation which this produced, and knew that there was hostility between his wife and his sister especially. Respondent finally left, and libellant and respondent subsequently made their home elsewhere. Libellant's complaint as to respondent's attitude toward members of his family has no validity in fact or in law. An indignity must be to the person of the injured spouse, and uncongeniality with relatives is no such indignity. *Othmer v. Othmer,* 158 Pa. Superior Ct. 384, 387, 45 A. 2d 389.

Libellant went on active duty in July, 1942, and thereafter did not see respondent until his discharge and return on December 18, 1945. They corresponded during this period, and nothing unusual seems to have occurred until shortly before libellant's return. Respondent wrote a letter in which she questioned libellant's fidelity. A cause of this suspicion was some clothing which he had shipped home. Her suspicion may have

been reasonably aroused. However, respondent seems to have realized that her suspicion in this connection was unfounded, and regretted that she had written the letter. But libellant was unwilling to forget her action, and insisted upon considering her "the aggressor in sending insulting letters." He testified that respondent's letters changed his feelings toward her. None was offered in evidence. Upon his return on December 18, 1945, respondent assumed a most conciliatory and friendly attitude, but libellant's conduct upon their meeting after a period of three and one-half years could not fail to produce a most profound reaction in any woman who had committed no more serious breach than his wife. He refused to kiss her or show any affection, and said, "I told her as far as I was concerned I would live in the house with her and that was that." He further testified: "I was perfectly willing to share the same table and live under the same roof but I had no desire of having physical contact." His own words are descriptive of an uncompromising and an inexcusable attitude. He testified: "I ignored her completely," and he told her, "You are no more desirable to me than a lamp post"; "I told her I had no more affection for her than I had for a telegraph pole." No man could expect a wife not to resent such an attitude and such statements. If libellant deliberately sought to antagonize his wife, he could not have pursued a clearer course of action. Respondent testified that during the month they lived together after his return from the army he repeatedly asked her to institute a divorce action.

The fact that respondent had been driven to attempt or threaten suicide indicates, we think, that libellant was not entirely free from blame. See *Kerr v. Kerr,* 115 Pa. Superior Ct. 18, 21, 174 A. 820. The testimony as to the revolver incident is conflicting, and respondent's version is just as plausible as that of libellant. We do not gather from the testimony any intent upon the

part of respondent to use it to injure libellant. The revolver was not loaded and had been in their possession for years. Libellant's allegation that respondent accused him of having a venereal disease is denied by her. She merely questioned his condition due to his refusal to have anything to do with her. Respondent may have struck libellant on one occasion during a quarrel, but the testimony clearly indicates that he did the same thing to her. No harm resulted from either act. At most, both were guilty of the same type of conduct.

Respondent testified she sought libellant's forgiveness because of the letter which she had written, but he was unrelenting and obviously wanted no reconciliation on any basis. The parties had associated with each other on most friendly terms for ten and one-half years before their marriage. Their principal trouble seems to have been confined to a one-month period in a married life of nine years. Libellant's reasons for his loss of affection for his wife are rather superficial. We think his conduct generally demonstrated that he was determined to have a severance of their marital ties, and he seems to have been looking for an excuse for such purpose. We are convinced that libellant is not entitled to a divorce, and we agree with the reasons given by the court below.

The decree of the court below is affirmed, at the cost of appellant.