Opinion by
 

 Reno, J.,
 

 In this divorce action the wife alleged cruelty and indignities. The master reported the evidence established indignities only and on that ground recommended a divorce. The court below overruled respondent’s exceptions, adopted the findings and conclusions of the master, and entered a decree of absolute divorce in favor of libellant.
 

 
 *512
 
 Libellant’s testimony indicated that she did not consider her life endangered by her husband’s alleged cruelties. She testified she controlled him on at least one occasion “by staring him in the face and showed him that I had no fear.” The complaint of cruelties will not be further considered.
 

 While physical attacks may not be of sufficient violence so as to constitute cruelties they may be considered with other acts in connection with the charge of indignities.
 
 Troianowski v. Troianowski,
 
 155 Pa. Superior Ct. 110, 38 A. 2d 367. That charge was established provided libellant’s testimony is believed. The master concluded the weight of the credible testimony rested with libellant and her failure to call supporting witnesses was neither fatal nor sufficient to discredit her testimony. While we are not bound by his findings, his conclusion upon the credibility of witnesses must be given the fullest consideration and should not be lightly disregarded.
 
 Brown v. Brown,
 
 163 Pa. Superior Ct. 490, 63 A. 2d 130;
 
 Boughter v. Boughter,
 
 164 Pa. Superior Ct. 574, 67 A. 2d 812.
 

 The master had the advantage of seeing and hearing the parties and their witnesses and observing their appearance and demeanor while testifying whereas we are confined to the printed record. “[T]he demeanor of witnesses is the very touchstone of credibility” and may well be the deciding factor in appraising trustworthiness.
 
 Smith v. Smith,
 
 157 Pa. Superior Ct. 582, 584, 43 A. 2d 371. A careful and independent review of the record discloses no sound basis for rejecting the master’s conclusion and the decree will be affirmed.
 

 Stated succinctly, the parties were married in 1936 and separated August 22, 1947. At the time of the hearing libellant was 33 years of age and respondent 15 years her senior. One child was born of the marriage. Libellant testified she and her husband owned and operated a confectionery store and that on two occasions re
 
 *513
 
 spondent threw a candy scoop at her merely because she was talking to customers. He also kicked her in the stomach while she was pregnant because she had not properly raised the awning. Respondent denied these allegations insisting they had only “minor arguments” and gallantly stated “If I kick her in the stomach the baby was gone.” When respondent was questioned relative to his wife’s charge of irregular sexual relations his reply was “That is the biggest lie I ever heard”, that he was “not [a] dog”, and that he did not “have the least idea of what you are talking about.”
 

 Libellant charged that three weeks after the baby was born her husband entered the apartment and ripped the molding off the wall and beat her with it in an effort to force her back to work at the store. Respondent’s explanation of the event was “I don’t remember anything like that . . . why didn’t she have me arrested?” She charged that he failed to support her during the period he visited his mother in Greece and that during their married life he never bought her any clothes. While this might be a natural feminine complaint the law does not deem mere neglect and non-support in themselves as constituting indignities.
 
 Fisher v. Fisher,
 
 154 Pa. Superior Ct. 497, 36 A. 2d 168. But such conduct is enlightening in considering respondent’s attitude toward his wife and the veracity of his own statements. Respondent testified on direct examination he arranged through his attorney for libellant to receive $120.00 a month during his absence but on cross examination he stated the amount was $100.00. In corroboration of libellant’s testimony her father and sister stated respondent never gave his wife money for clothes and her family contributed clothing and money.
 

 Libellant asserted that on New Year’s day 1947 while she was working at the stove her husband attempted to hit her with a curved poker because she had thrown out some broccoli prepared on.the preceding day. She picked
 
 *514
 
 up a skillet in -self • defense but respondent got her on the floor and knocked her head against the refrigerator. When questioned as -to this incident respondent testified “That is untrue. Is there anybody that saw it?” Libellant .further charged her:, husband struck her almost every day, threatened to kill her, told her he “would hang me in the cellar like a rotten banana”, and insisted upon having sexual relations in the same bed where their small child was sleeping. It was this latter demand which caused the final separation.
 

 Respondent accused his wife of bringing men to the house, “running around” .with one Henry Herr, that “two guys”'kissed her in the:store, of having parties while he was overseas, and having an abortion performed. Several witnesses for respondent inferentiálly supported his assertions. They testified they saw libellant at- various times in cars or on the street with different men and while respondent was overseas observed men eating at the house. However, none of the witnesses could attest to any improper conduct nor could they identify libellant’s alleged gentlemen friends.
 

 Respondent’s sole complaint concerning his wife appears to be directed toward her conduct with other men and one Freda Shiff. Although respondent Charges he saw his wife “running around” with Henry Herr, he had allowed him to come to the house for dinner and was introduced to. him; yet when asked whether he saw anything improper between Herr and his wife, he replied “I would not know the man if I saw him now.”
 

 The record is devoid of any substantial evidence to prove libellant was guilty of such improprieties as to justify respondent’s conduct or from which we could conclude that she is not the injured and innocent spouse.
 

 Also indicative of respondent’s demeanor was the fact that on several occasions during the course of the hearing he was admonished by the master and counsel for interrupting and attempting to prompt and explain
 
 *515
 
 the testimony of his witnesses. When respondent was called upon to testify he refused saying he was too ill and if he started “it will take, me about, five years.” He thereupon walked out of the hearing. At the subsequent hearing his counsel attempted to explain this conduct by a doctor’s certificate showing respondent was subject to severe migraine headaches.
 

 ' Under the circumstances there is no basis upon which the master’s finding of credibility can be impeached. Nor must libellant produce corroborating testimony since her version of their marital tribulations was not satisfactorily contradicted or shaken by respondent, and there are no convincing circumstances to warrant disregard of her evidence.
 
 Friess v. Friess,
 
 156 Pa. Superior Ct. 38, 43, 39 A. 2d 151;
 
 Fogel v. Fogel,
 
 161 Pa. Superior Ct. 361, 54 A. 2d 844;
 
 Bozarth v. Bozarth,
 
 159 Pa. Superior Ct. 509, 49 A. 2d 198.
 

 We find libellant has established the charge of indignities by clear and satisfactory evidence.
 
 Blose v. Blose,
 
 163 Pa. Superior Ct. 322, 61 A. 2d 370. Respondent’s course of conduct rendered her condition intolerable and life burdensome and there is ample evidence from which an inference of settled hate and estrangement may be deduced.
 
 Solof v. Solof,
 
 161 Pa. Superior Ct. 94, 54 A. 2d 87;
 
 Cutter v. Cutter,
 
 165 Pa. Superior Ct. 103, 68 A. 2d 192.
 

 Decree affirmed.