## Persi, Appellant, *v.* Persi.

Submitted November 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*James B. Ceris* and *Joseph Knox Stone,* for appellant.

*Theodore A. Tenor* and *Milton Selkovits,* for appellee.

OPINION BY RHODES, P. J., January 17, 1952:

Silvino R. Persi filed his complaint in the Court of Common Pleas of Beaver County on January 21, 1950, charging his wife, Rena Persi, the defendant, with indignities to his person, and praying for a decree divorcing plaintiff and defendant from the bonds of matrimony. Plaintiff filed a bill of particulars. An answer was filed by defendant to the complaint.

The master to whom the case was referred recommended that a decree be entered granting an absolute divorce. The court below sustained exceptions to the master's report and dismissed the complaint. Plaintiff has appealed to this Court.

In dismissing plaintiff's complaint the court below concluded that plaintiff failed to sustain the burden of making out a case which would entitle him to a decree of divorce, and that plaintiff was not the injured and innocent spouse.

Section 10 of The Divorce Law, Act of May 2, 1929, P. L. 1237, as amended by the Act of March 19, 1943, P. L. 21, §1, 23 PS §10, provides that it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony whenever the other spouse "(f) Shall have offered such indignities to the

person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; . . ."

In *Anthony v. Anthony*, 160 Pa. Superior Ct. 18, 20, 21, 49 A. 2d 877, 878, we said: "In order to determine whether a particular libellant is an 'innocent and injured spouse,' the court must not only examine and weigh the evidence relating to the many complex factual situations which make up the total picture of marital conduct, but it must evaluate this evidence with relation to the defenses available to the respondent in connection with the particular grounds for divorce relied upon by the libellant. . . . The phrase or expression is not without weight in reaching an ultimate conclusion and in sustaining a decree granting or refusing a divorce. . . . But the phrase is not a part of the charge or ground for divorce to be alleged in the libel. . . . As used in the act, it is a descriptive phrase for designating the one of two spouses who, because of the reasonable expectation of establishing a valid case, assumes the role of libellant."

The testimony in this case was conflicting. Plaintiff was contradicted by defendant in nearly every respect. There was very little corroboration of either party's version of their marital troubles. The master apparently accepted plaintiff's testimony in making his findings of fact, but his conclusion that they established the charge against defendant is open to question. The court below, recognizing that the master who observed the appearance and demeanor of the witnesses was in a better position to determine their credibility than one who was confined to the printed record, nevertheless found from its study of the record that any indignities of which defendant might have been guilty were provoked by plaintiff, and that the worst that could be said against defendant's conduct is that both parties may have been equally at fault.

Our independent review of the record in this case leaves no doubt in our minds that the decree of the court below dismissing the complaint must be affirmed. The fundamental characteristics of "indignities to the person" were not clearly and satisfactorily established by plaintiff. We are not convinced that there was a course of conduct by defendant which rendered the condition of plaintiff intolerable and his life burdensome and manifested a settled hate and estrangement on the part of defendant. *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, 119, 50 A. 2d 520. Moreover, defendant's conduct of which plaintiff complains may be attributable in large part to his own conduct toward her.

Plaintiff and defendant were married on May 18, 1946, at Aliquippa, Beaver County, Pennsylvania. Following a rather extensive wedding trip the parties resided in the home of plaintiff's parents in Aliquippa. Defendant worked in the adjoining family store, and helped with the housework. Defendant withdrew from plaintiff's family on January 19, 1949, and went to reside with her own parents in the same city. This action on the part of defendant was the result of plaintiff's inconsiderate attitude and the fact that she was required to work long hours in the store conducted by her mother-in-law. He claimed that he took her to six weddings, but admitted that he had never taken her elsewhere during the time they lived together.

The parties then entered into a separation agreement wherein it was stipulated that, when plaintiff provided defendant with a home separate and apart from the home of his parents, she would return and live with him, and, in the event that she refused, the provisions of the agreement would cease and terminate. During the period the agreement was operative, plaintiff was bound to pay defendant $50 a month for her support. Plaintiff's gestures in obtaining a home separate and apart from his parents were not made, in our opinion, in

good faith. Shortly after the execution of the agreement plaintiff looked at a place some distance from Aliquippa. It was an apartment consisting of two or three rooms with no modern facilities except electricity. At the time, the apartment was occupied, and it does not appear that it was ever available. In testifying that it was a proper, suitable, and convenient place to live, plaintiff indicates that he had very little concern for defendant's welfare and comfort. Subsequently, on a charge of desertion and nonsupport, an order of $50 a month was made by the Court of Quarter Sessions of Beaver County. Thereupon plaintiff did acquire an apartment in Aliquippa, and defendant returned to live with him on October 18, 1949. Plaintiff's course of conduct was such as to make this attempted renewal of cohabitation futile. In the first place, he had her notified by special delivery letter that he had acquired this apartment which consisted of two rooms on a third floor. They started to live together again on October 18, 1949, and they continued to live together for about four weeks. Defendant testified that plaintiff did not bring his clothes to the apartment; that he would not eat his meals at home; and that he insisted upon sleeping in the kitchen on a chair. The parties finally separated in November, 1949. Plaintiff's actions are corroborative of defendant's testimony that he did not want her any more. The methods which he used to avoid further payment of support cannot even be described as subtle.

The families of both parties lived in Aliquippa. Plaintiff refused to call upon defendant's family after Christmas, 1946. On the other hand, he insisted upon her living with his parents. Plaintiff and his mother utilized the services of defendant, and she was treated more as a servant than as his wife. It is most probable that one of the reasons for their marital difficulties was too much of his family. The testimony of his sis-

ters indicates that they did not help the situation in this respect. When plaintiff set up a separate home, defendant attempted to perform her duty and live with him. But plaintiff was lacking in sincerity, and his own conduct made a continuation of the marital status impossible. Cf. *Ziegenfus v. Ziegenfus,* 159 Pa. Superior Ct. 521, 49 A. 2d 275. His charges that defendant was always angry at him, and that she often swore at him do not measure up to unprovoked indignities in this case. The complaint that defendant did not perform her household duties, if true, furnish no ground for divorce. *Stinson v. Stinson,* 163 Pa. Superior Ct. 497, 63 A. 2d 413.

An appraisal of the testimony in this case warrants no other conclusion than that plaintiff "has failed to establish unmerited reproach, habitual contumely, studied neglect, intentional incivility, malignant ridicule, or any other plain manifestation of settled hate and estrangement. He has not shown by clear and satisfactory evidence a course of conduct by her inconsistent with his relation and position as a spouse which has made his condition intolerable and life burdensome." *McKrell v. McKrell,* 352 Pa. 173, 182, 42 A. 2d 609, 613.

Decree dismissing complaint is affirmed.