Sharpe *v.* Sharpe, Appellant.

Argued November 10, 1954.   Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Edward B. Bulleit,* with him *Bulleit & Bulleit,* for appellant.

*Harold S. Irwin,* with him *Irwin & Irwin,* for appellee.

OPINION BY RHODES, P. J., January 14, 1955:

Ethel Marie Sharpe, the defendant, has appealed from the decree of the Court of Common Pleas of Adams County granting a divorce a vinculo matrimonii to her husband, Philip B. Sharpe, the plaintiff.

The complaint was filed by plaintiff on June 7, 1951, and alleged as grounds for divorce (1) indignities to the person, (2) cruel and barbarous treatment, and (3) desertion. After extended hearings the master concluded that the charge of cruel and barbarous treatment had not been sustained by the evidence, but he recommended that a divorce be granted on the charges of indignities to the person and desertion.

The court below refused to sustain exceptions filed by the defendant to the report of the master, and entered a decree of divorce on the three grounds set forth in the complaint. On appeal to this Court, defendant contends that the entry of a decree on any of the three grounds was error.

The parties were married on July 5, 1940, in the state of Maine, where they thereafter resided about a year. In 1941 they moved to Pennsylvania and established a home near Gettysburg, Adams County. Subsequently, they moved to Red Lion, York County. In December, 1942, plaintiff entered the armed forces and

was sent overseas in December, 1944. Returning from overseas, plaintiff was mustered out of service on May 16, 1946. On July 2, 1947, the parties began to live together in Liberty Township, Adams County. Two children were born of the marriage. After the middle of December, 1947, the parties were apart. Plaintiff went to the hospital, and defendant removed during that period their belongings from their home.

Plaintiff is a writer and a ballistic expert. Defendant is a public school librarian. Their marital life was far from placid or pleasant. Litigation was frequent and of various types prior to this divorce action.

The charge of cruel and barbarous treatment is the outgrowth of one incident, although defendant's conduct in this respect cannot be entirely separated from her previous actions. It was the manifestation of the feeling of hatred and hostility which defendant had long displayed.

About the middle of December, 1947, plaintiff became ill with pneumonia, and was removed to a hospital in Gettysburg, where he remained as a patient for about two weeks. While plaintiff was in the hospital, and without his knowledge, defendant removed virtually everything from their home, regardless of whether she had or had not any use for many of the items. Plaintiff left the hospital by virtue of his own certification and contrary to the wishes of his doctor, who directed relator to remain in bed at home for at least two weeks. Defendant called for him and took him home after dark during a heavy snow storm, and then, after leaving him at the house, she drove away with the children. The house was cold and there was no food available. Defendant had removed the furniture and consequently plaintiff was left without a bed or stove. Plaintiff was without telephone service,

and a mailman obtained for him provisions, dishes, and an electric plate. A few days later defendant had plaintiff arrested for nonsupport.

It is a reasonable assumption that plaintiff became ill with pneumonia due to the relationship of the parties as a result of which plaintiff was obliged to live in the attic of the home. Although plaintiff did recover and defendant did not inflict any actual physical violence upon him, we nevertheless agree with the court below that the conduct of defendant constituted cruel and barbarous treatment. We think that defendant obviously intended to endanger the health and life of plaintiff. Her action was premeditated and planned, and is subject to the conclusion that she willfully and maliciously sought to jeopardize his recovery. The fact that defendant brought plaintiff from the hospital while he was still ill and left him in a cold house without a stove, bed, food, or telephone indicated a vicious disposition, and sustained the charge of cruel and barbarous treatment. Plaintiff could not have anticipated the situation which defendant had purposely created. Defendant must have intended the natural and probable results of her conduct. Although plaintiff recovered, it could be said from defendant's treatment of him that further cohabitation would have been dangerous to his physical safety. Cruel and barbarous treatment need not be such as to actually cause injury, endangering the life, but may be shown by conduct creating a reasonable apprehension. *Sklan v. Sklan*, 110 Pa. Superior Ct. 226, 229, 168 A. 481. A single act is sufficient to justify a divorce. *Santilli v. Santilli*, 155 Pa. Superior Ct. 407, 410, 38 A. 2d 415. Defendant by her premeditated action intentionally endangered plaintiff's life.[1]

---

[1] Cf. *Territory v. Manton*, 7 Mont. 162, 14 P. 637, 638; Id., 8 Mont. 95, 19 P. 386, 392.

The recited facts constituting cruel and barbarous treatment are relevant and material proof on the issue of indignities. See *Phipps v. Phipps,* 368 Pa. 291, 294, 81 A. 2d 523; *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 303, 181 A. 69. We think that on the record in this case the charge of indignities to the person of the plaintiff was established if his testimony is believed. From our independent examination of the evidence we conclude that defendant's conduct must have rendered the condition of plaintiff intolerable and his life burdensome and that there was evidence of settled hatred and estrangement on the part of defendant. "The essential feature of the offense of indignities to the person is that it must consist of a course of conduct or continued treatment which renders the conditions of the innocent party intolerable and his or her life burdensome": *Martin v. Martin,* 154 Pa. Superior Ct. 313, 317, 35 A. 2d 546, 548. It is unnecessary to relate in detail the course of conduct on the part of defendant which leads us to this conclusion. It is sufficient in addition to the facts which have previously been stated to mention defendant's repeated charges of plaintiff's infidelity, her constant verbal abuse, her conduct in publicly humiliating plaintiff, her malicious interference with his work, the destruction of his papers and files, the writing of letters to plaintiff's clients, and attempts to embarrass him with the Bureau of Internal Revenue in the absence of his records. Defendant's course of conduct prior to the institution of the divorce action clearly establishes the charge of indignities to the person of plaintiff.

Defendant admits that she intended to terminate the marriage relationship and the manner of her leaving fully establishes the willfulness and malice necessary to support the charge of desertion. It is uncontradicted that defendant definitely withdrew from the

common domicile on or about January 4, 1948. Plaintiff had no knowledge of the removal of the household furnishings or of her intention as he had been in the hospital for a period of about two weeks. The separation was without plaintiff's consent, and we find no justification or reasonable cause for defendant's absenting herself from their habitation which continued without interruption for the statutory period. Defendant's contention is that her leaving plaintiff was justified as a result of the filing by plaintiff of a petition for the appointment of a commission to examine defendant. We are of the opinion that the credible testimony establishes that the action of plaintiff in this respect was in good faith and for the purpose of helping defendant to lead a more normal and harmonious life with plaintiff. The action of plaintiff in endeavoring to have defendant placed where she could be examined by competent physicians seemed to be from a proper motive, and after medical and legal advice. Certainly, defendant's attitude was such that it was difficult, if not impossible, to have the marriage status maintained.

We find nothing on the part of plaintiff which would preclude the granting of a divorce in this case. We agree with the statement of President Judge SHEELY, in his opinion, that: "Considering the conduct of the parties after the commission met, and the plaintiff's apology and explanation to the defendant, . . . the petition for the appointment of the commission did not justify the acts of the defendant."

In their testimony plaintiff and defendant contradicted each other in many respects. The master who saw and heard the parties testify said that defendant "was not credible and trustworthy." In making our own independent review of the record, we have given the fullest consideration to the conclusion of the mas-

ter upon the question of credibility. *Megoulas v. Megoulas,* 166 Pa. Superior Ct. 510, 512, 72 A. 2d 598.

Decree is affirmed.