Faszczewski *v.* Faszczewski, Appellant.

Argued April 10, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Alexander J. Bielski,* for appellant.

*I. Elmer Ecker,* with him *E. P. Curran,* for appellee.

OPINION BY RHODES, P. J., November 15, 1956:

The plaintiff, John Faszczewski, filed his complaint in divorce charging his wife, the defendant, with indignities to the person. An answer was filed, and a master was appointed who held three hearings. The master recommended a decree, and the court below, after dismissing exceptions to the report, entered a decree of divorce from the bonds of matrimony. Defendant has appealed.

The parties were married on June 27, 1934. Plaintiff finally left the marital home on December 12, 1952, after several absences of varying duration. Plaintiff is about forty-two years of age and defendant about forty-five. There are no children by the marriage. Plaintiff has been employed at the Pittsburgh Rolls Company. Defendant maintains a shop as a seamstress. After first living in the home of defendant's parents they finally acquired a home of their own in 1942.

Plaintiff's testimony covers many complaints relative to the conduct of defendant. Acceptance of his testimony and that of his witnesses without reservation would probably justify a decree in divorce. However, it presents an unacceptable portrayal of the marriage. The testimony of neither party gives a true indication of the responsibility for the unfortunate circumstances

of this marriage. Considering all the evidence, we are convinced that both are equally chargeable with the result.

The burden was on plaintiff to prove a legal cause for divorce as set forth in section 10 of the Act of May 2, 1929, P. L. 1237, as amended, 23 PS §10. It was not only necessary for him to establish such a course of conduct on the part of defendant as to render his condition intolerable and his life burdensome by evidence from which an inference of settled hatred and estrangement could be deduced (*Monaco v. Monaco*, 160 Pa. Superior Ct. 117, 119, 50 A. 2d 520), but he must also be both the injured and innocent spouse within the contemplation of the statute (*Politylo v. Politylo*, 173 Pa. Superior Ct. 223, 228, 95 A. 2d 241). The indignities of which plaintiff complains shall not be such as he himself has provoked. *Putt v. Putt*, 118 Pa. Superior Ct. 74, 78, 180 A. 92.

Both parties may have been injured to some extent by the conduct of the other; but our conclusions from an independent examination of the record are that plaintiff is not an innocent spouse and that he is not entitled to a divorce under the laws of this Commonwealth. See *Blatt v. Blatt*, 172 Pa. Superior Ct. 391, 399, 94 A. 2d 160.

The master and the court below apparently accepted plaintiff's version of his marital life by giving full credibility to his testimony and completely disregarding that presented by defendant. In concluding that defendant was not entitled to belief the master stated: "The Defendant's demeanor on the stand was somewhat flippant, she did not act as a person should act when she related the degrading incidents about her married life. She was too calm, collected and constantly snickering and smiling, as though she was repeating an in-

nocent everyday occurrence." On the other hand, the master felt that plaintiff should be believed because his "testimony was straightforward and his manner and actions on the stand convinced your Master that he was telling the truth . . ." We recognize that a master's conclusions on credibility of witnesses are entitled to the fullest consideration (*Megoulas v. Megoulas,* 166 Pa. Superior Ct. 510, 512, 72 A. 2d 598), but the present case is not one which may be resolved by a single all-inclusive finding of credibility in favor of one party. While defendant may have been somewhat lacking in dignity when she testified, it does not follow on this record that everything she said was not true. The master's impression that plaintiff and his witnesses gave the more honest, least biased version cannot control our appraisal of the weight and credibility of the testimony. *Friess v. Friess,* 156 Pa. Superior Ct. 38, 43, 39 A. 2d 151. We are not inclined to believe either party completely; much that was said by one about the other is apparently true.

Plaintiff was unduly evasive in his testimony, especially that concerning the truth of defendant's accusations of his infidelity. These accusations of infidelity and the use of abusive language by defendant were largely the basis of the indignities of which plaintiff complains. Some of the accusations arose out of plaintiff's absences from home, which he said were for union or church purposes or social activities connected therewith. Plaintiff was a steward in a union to which he belonged. According to his testimony defendant objected to his attending many such meetings, and accused him of being unfaithful under the pretense of his union activities. Defendant testified that plaintiff, under the guise of such activities, remained away from home for days at a time, and especially over long week-ends

extending from Friday to Monday or Tuesday. She testified that he would return home with his clothing soiled and marked, and with contraceptives in his pockets. In rebuttal to such testimony plaintiff merely denied ever using contraceptives. In respect to his absences over week-ends, plaintiff testified that he was away on picket duty. It is significant that he could not remember where such services were rendered, what local unions were involved, or even the plants that were picketed. Moreover, on several occasions prior to the final separation in 1952, plaintiff left their home for periods of several months at a time. In 1940 he left for a period of four or five months. In 1947 he left for a period of two or three months. Although plaintiff admitted and attempted to justify these two extended absences, it appears that he made no admission or denial of the testimony of defendant concerning a five-month absence in the year 1949. Defendant testified that during this period he lived with another woman whom she named. Defendant, in the presence and within hearing of plaintiff, had a telephone conversation with this woman who expressed surprise on learning that plaintiff was married, having previously been informed by him and his family that he was a single man. Defendant testified that on this occasion plaintiff not only admitted the meretricious relationship but informed defendant that the other woman had been pregnant, that he arranged an abortion for her, and that this was his reason for remaining away from home. In rebuttal plaintiff merely denied living with the other woman at a certain address. He did not deny the telephone conversation, his alleged admissions at the time, or the pregnancy and abortion.

Defendant's uncontradicted testimony also establishes that on another occasion plaintiff came home with

broken dentures as a result of a fight over a woman; that plaintiff remained away from home for three days on this occasion; and that again the woman involved called and requested that plaintiff pay the rent for the room they had shared. Defendant testified that plaintiff admitted the fight and his infidelity on this occasion. Plaintiff made no denial of this testimony. A witness for defendant testified that she had seen plaintiff out with other women. The incidents recited in detail by defendant related to the accusations which plaintiff now claims were false and unfounded. Nevertheless he remained silent or submitted general and evasive denials. His feeble and unimpressive attempt to deny only an insignificant portion of the charges lends credence to the testimony of defendant in this respect. See *Welsh v. Welsh*, 142 Pa. Superior Ct. 421, 427, 428, 16 A. 2d 672.

We are convinced that plaintiff's testimony was not entitled to the unqualified acceptance which the master and the court below seem to have given it. This is clearly illustrated by the fact that, in testifying about the vile and vulgar language of defendant, plaintiff denied that he used similar language when addressing defendant. However, his own witness, a neighbor of the parties, testified to the heated arguments which they had and to the profanities of plaintiff as well as of defendant.

We are obliged to conclude that plaintiff is not entitled to a divorce as he was not "the innocent and injured spouse," and that his conduct largely provoked the alleged indignities.

The only thing that may be said to be clear in this case is that the parties were incompatible. Certainly the conduct of both indicates their mutual disrespect. We recognize that a party should not be denied a di-

vorce merely because he or she is not entirely without fault (*Boyles v. Boyles,* 179 Pa. Superior Ct. 184, 195, 116 A. 2d 248), but in the instant case plaintiff's extended excursions on week-ends and for months at a time were something more than that of a mere harassed husband and dedicated union steward. His conduct, especially his associations with other women, was of sufficient consequence to require a dismissal of his complaint. See *Rech v. Rech,* 176 Pa. Superior Ct. 401, 411, 107 A. 2d 601; *Paterson v. Paterson,* 178 Pa. Superior Ct. 615, 620, 115 A. 2d 919.

The decree is reversed and the complaint in divorce is dismissed.

---

DISSENTING OPINION BY WOODSIDE, J.:

I disagree with the majority that the court below should be reversed, and this divorce refused.

The determination of what occurred during the married life of the parties depends largely upon the credibility of the witnesses. The master's findings and conclusions should be given the fullest consideration by us because of his opportunity to hear and observe the witnesses. *Megoulas v. Megoulas,* 166 Pa. Superior Ct. 510, 512, 72 A. 2d 598 (1950); *Sharpe v. Sharpe,* 177 Pa. Superior Ct. 76, 81, 110 A. 2d 804 (1955).

The master believed the testimony of the plaintiff, and the court below, after a thorough consideration of the matter as evidenced by its opinion, approved the master's report. The plaintiff's testimony was substantiated by a number of witnesses. The wife called only one witness, who added little to her case.

It seems to me that the majority have given little or no weight to the testimony of the plaintiff and his witnesses, and have given full credence to the testi-

mony of the wife-defendant. When the question is one of credibility the judges who have not had the opportunity of seeing and hearing the witnesses are in a much less favorable position to determine the truth than the master who observed the witnesses as they were testifying.

The evidence indicates that the husband-plaintiff was subjected to obscene and vulgar abuse; that the wife made false charges of immorality against her husband's family, called his sisters "whores", and his mother a "witch"; that through her misconduct and abuse of his friends she frequently embarrassed him before them. There was evidence that she deliberately failed to give him messages from his union and his employer, and that she failed to relay messages to his employers about his illness, with resultant impairment of his position with the union and with his employer. There is evidence that she failed to prepare his meals on many occasions.

The plaintiff testified that he was steward of his union, and that every time he attended a meeting or engaged in any picketing his wife accused him of infidelity and used abusive, obscene and profane language toward him. He testified that she would nag him during the night as a result of which he could not sleep, became nervous, lost weight; all of which had an adverse effect upon his health and employment.

On one occasion when the parties had been to a motion picture show and he wanted to stop at the Roosevelt Hotel for a beer, she, insisting upon going home, swore and created a commotion on the street which attracted attention. Then after he took her home in a cab and went down the street for a beer, she said that the only reason he took her home was so that he could go out with another woman.

There is evidence that because of the wife's patent unfriendliness and unfair accusations, plaintiff's friends of many years standing discontinued calling at his home, and that because of the abusive conduct and false accusations made against plaintiff's family, they did not visit his home. There is evidence that when the plaintiff's sister attempted to telephone her brother concerning the critical illness of their mother, the defendant hung up the telephone and did not deliver the message.

Other witnesses corroborated the plaintiff's testimony that his wife called him "whoremaster" and "bastard", and that on one occasion when leaving with a fellow male employer to attend a steel worker's convention she said, "I hope you two whoremasters get a good dose."

Although the wife denied the husband's accusation, nevertheless, substantiation of his charges can be found in her testimony. For example, on direct examination the defendant categorically denied the use of opprobrious language to the plaintiff, but later admitted saying to the plaintiff, when he attempted to effect a reconciliation, "Well, I don't know. I think once a whoremaster, always a whoremaster." This is the type of language which the plaintiff and his witnesses said she used toward her husband. Although denying that she had been unfriendly to her husband's family, she admitted referring to her mother-in-law as a "witch".

The accusations of infidelity were continuously made by the wife over a period of many years and almost every time the plaintiff had been out of his wife's sight. This conduct throws considerable doubt upon the defendant's testimony, undetailed and uncorroborated, that the plaintiff frequently had lipstick on his clothing, and for a time lived with another woman.

I think the majority should have given greater weight to the master's report and to the opinion of the court below, and that upon a consideration of all of the evidence we should affirm the decree granting the divorce.

ERVIN, J., joins in this dissent.